COMMONWEALTH *vs.* THOMAS J. SHIELDS.

Worcester. December 7, 1987. — April 14, 1988.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Constitutional Law*, Search and seizure, Roadblock by police. *Search and Seizure*, Automobile, Threshold police inquiry, Roadblock by police. *Motor Vehicle*, Operating under the influence.

In a criminal case, the prosecution is not required, as a precondition to the admission of evidence of a motor vehicle operator's intoxication obtained as a result of a "sobriety checkpoint," or roadblock, to prove that there was no less intrusive alternative to the checkpoint or roadblock which would have been effective to accomplish the legitimate public safety goals of the Commonwealth, where it was demonstrated that the roadblock was conducted in accordance with the guidelines set forth in *Commonwealth* v. *Trumble,* 396 Mass. 81 (1985), and *Commonwealth* v. *McGeoghegan,* 389 Mass. 137 (1983). [165-168] LIACOS, J., dissenting, with whom LYNCH, J., joined.

COMPLAINT received and sworn to in the Spencer Division of the District Court Department on January 12, 1987.

On appeal to the jury session of the Worcester Division questions of law were reported to the Appeals Court by *Thomas F. Sullivan, Jr.,* J. The Supreme Judicial Court granted a request for direct review.

*Conrad W. Fisher* for the defendant.

*Harry D. Quick, III,* Assistant District Attorney, for the Commonwealth.

*Marjorie Heins,* for Civil Liberties Union of Massachusetts, amicus curiae, submitted a brief.

*James M. Shannon,* Attorney General, *Madelyn Wessel, Judith Saltzman, Tung Huynh,* Assistant Attorneys General, & *Stanley E. Adelman,* for the Secretary of Public Safety, amicus curiae, submitted a brief.

HENNESSEY, C.J. The defendant, Thomas J. Shields, was stopped at a State police "sobriety checkpoint" (roadblock) at

approximately 1:15 A.M. on September 13, 1986. After performing several field sobriety tests, Shields was arrested and charged with operating his vehicle while under the influence of intoxicating liquor in violation of G. L. c. 90, § 24 (1986 ed.).

Shields moved to suppress the evidence obtained following his stop at the roadblock, contending that it was the fruit of an unlawful seizure. In support of this motion, Shields argued that the Commonwealth must prove that no less intrusive alternative would be as effective as roadblocks in enforcing c. 90, § 24, before the roadblock seizure could be found to be constitutionally permissible and the evidence obtained at the roadblock admitted. The Commonwealth acknowledged that it must prove that the roadblock was conducted in accordance with the procedures outlined in *Commonwealth* v. *Trumble*, 396 Mass. 81 (1985), and *Commonwealth* v. *McGeoghegan*, 389 Mass. 137 (1983), but denied that it must disprove the existence of equally effective yet less intrusive alternatives to enforcing c. 90, § 24, before the evidence obtained at the roadblock could be admitted.

The judge noted that resolution of the dispute was likely to be dispositive of Shields's case, that the issue was likely to arise in similar proceedings, and that an improper determination in the trial court that the Commonwealth must disprove the existence of equally effective, less intrusive alternatives to roadblocks would result in unnecessary expenditure of judicial resources at trial. Accordingly, the judge properly reported the following two questions to the Appeals Court under Mass. R. Crim. P. 34, 378 Mass. 905 (1979): "1. Whether, as a precondition to the admission of evidence obtained as a result of a sobriety checkpoint or roadblock operated by law enforcement personnel, the Commonwealth is required to prove that there was no less intrusive alternative to the checkpoint or roadblock which would have been effective to accomplish the legitimate public safety goals of the Commonwealth. 2. Whether, assuming that the preceding question is answered in the affirmative, the standard of proof by which the Commonwealth must bear its burden is beyond reasonable doubt, by clear and convincing

evidence or by a preponderance of the evidence." We granted the parties' application for direct appellate review of these questions.

The defendant grounds his argument in both the Fourth Amendment to the Constitution of the United States and art. 14 of the Declaration of Rights of the Massachusetts Constitution.[1] We conclude that neither of these provisions requires the Commonwealth to prove that there are no equally effective yet less intrusive alternatives for enforcing G. L. c. 90, § 24, than roadblocks. We therefore answer question one in the negative, and need not address question two.

The stop of Shields's motor vehicle was a seizure. *Commonwealth* v. *Trumble, supra* at 86. This seizure violates the Fourth Amendment and art. 14 only if it was unreasonable. See, e.g., *INS* v. *Delgado*, 466 U.S. 210, 215 (1984); *Commonwealth* v. *Sheppard*, 394 Mass. 381, 391 (1985). Decisions of this court and of the Supreme Court establish that there is "no ready test for determining reasonableness other than by balancing the need to search [or seize] against the invasion which the search [or seizure] entails." *Commonwealth* v. *Silva*, 366 Mass. 402, 405 (1974), quoting *Camara* v. *Municipal Court of the City of San Francisco*, 387 U.S. 523, 536-537 (1967) (administrative search). See *Trumble, supra* at 86 (to determine reasonableness of seizure court balances "the public interest against 'the individual's right to personal security free from arbitrary interference by law officers'"), quoting *United States* v. *Brignoni-Ponce*, 422 U.S. 873, 878 (1975).

Because Shields was seized without a warrant, the Commonwealth bears the burden of proving that the seizure was reasonable. *Commonwealth* v. *Antobenedetto*, 366 Mass. 51, 57 (1974). To carry its burden of proving that the roadblock seizure was reasonable the Commonwealth must show, at least, that the roadblock was conducted in accordance with the guidelines established in *Trumble, supra*, and *Commonwealth* v. *Mc-*

---

[1] Article 14 provides in some circumstances greater protection from searches and seizures than does the Fourth Amendment. See, e.g., *Commonwealth* v. *Upton*, 394 Mass. 363, 372-377 (1985) (stricter standard for determining probable cause under art. 14).

*Geoghegan*, 389 Mass. 137 (1983). See *Commonwealth* v. *Amaral*, 398 Mass. 98, 101 (1986). Adherence to these guidelines, the content of which need not be recited here, assures that a roadblock seizure is the result of a "plan embodying explicit, neutral limitations on the conduct of individual officers." *Brown* v. *Texas*, 443 U.S. 47, 51 (1979). Conducting roadblocks in accordance with such neutral criteria minimizes the risk "that the individual's reasonable expectation of privacy [will be] 'subject to the discretion of the official in the field.' " *Delaware* v. *Prouse*, 440 U.S. 648, 655 (1979), quoting *Camara, supra* at 532. Adherence to the guidelines' requirements also assures that the surprise, fear, and inconvenience to — and therefore the intrusion on — the motoring public is minimized. See *McGeoghegan, supra* at 143-144. In sum, leaving aside the question of less intrusive alternatives, where the Commonwealth shows that a roadblock employed to enforce c. 90, § 24, was operated in accordance with the established guidelines, the accompanying seizures, although not conducted on the basis of individualized suspicion, are reasonable under the Fourth Amendment and art. 14. *Trumble, supra* at 89-90.[2]

Shields, of course, does not leave aside the question of less intrusive alternatives. He argues that, in order for the Commonwealth to meet its burden of showing that the roadblock seizure at issue here was reasonable, it must prove that there was no

---

[2] The question of probable cause has not been raised in this case (or in the companion case we decide today). Nor was the subject of probable cause presented or discussed in our earlier opinions concerning roadblocks. The dissent nevertheless volunteers a discussion on the question.

The basic issue is the reasonableness of the search, not the presence or absence of probable cause to believe evidence of a crime is likely to be found. In administrative searches a showing of individualized suspicion is not required because of the public interest in the inspection. See *Camara, supra* at 534-535. The same considerations fairly apply with respect to roadblocks conducted pursuant to established procedures in order to detect drivers operating under the influence of alcohol or other drugs. See 4 W.R. LaFave, Search and Seizure § 10.8(d), at 70-71 (1987). That probable cause need not be shown as to the driver who is stopped is implicit in what we said in *Commonwealth* v. *Trumble, supra* at 89-90, when we concluded that a search pursuant to established guidelines would be reasonable under both the Federal and State Constitutions. See also *id.* at 96 (Abrams, J., concurring).

equally effective yet less intrusive alternative to enforcing c. 90, § 24. We disagree.

Less intrusive alternative analysis traditionally has not been employed in determining the constitutional reasonableness of searches and seizures. Indeed, in one case involving a vehicle search we declined to employ less intrusive alternative analysis and observed that "[t]he fact that, in the abstract, less intrusive means might have been used does not, by itself, render the search unreasonable." *Commonwealth* v. *Ortiz,* 376 Mass. 349, 357 (1978), citing *Cady* v. *Dombrowski,* 413 U.S. 433, 447 (1973). Accord *United States* v. *Sharpe,* 470 U.S. 675, 687 (1985) ("The question is not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or to pursue it"); *United States* v. *Villamonte-Marquez,* 462 U.S. 579, 591 n.5 (1983); *United States* v. *Martinez-Fuerte,* 428 U.S. 543, 556 n.12 (1976). The defendant does not address the language quoted from *Ortiz, supra,* nor does he indicate why the principle of that language is inapplicable in this case.

Article 14 and the Fourth Amendment proscribe only unreasonable law enforcement conduct. As such, these provisions evince a policy of accommodating the legitimate State interest in law enforcement while preventing arbitrary searches and seizures. It would be inconsistent with that policy to rule that, in order to prove that a search or seizure is lawful, the Commonwealth must prove that each of a multiplicity of proffered hypothetical courses of conduct if used would be either less effective or more intrusive. Where the defendant merely conjectures that equally effective yet less intrusive means of enforcing c. 90, § 24, exist, "[t]he [Commonwealth] is entitled in the interest of public safety to bring all available resources to bear, without having to spell out the exact efficiency coefficient of each component and of the separate effects of any particular component." *People* v. *Scott,* 63 N.Y.2d 518, 528-529 (1984). The focus of the inquiry is on the conduct which in fact occurred. The Commonwealth's burden is to prove that the intrusion generated by that conduct is outweighed by the need to search or seize. *Commonwealth* v. *Silva, supra* at 405.

We reject the defendant's argument that the result we reach opens the door for suspicionless searches and seizures in other contexts. Police will not be allowed, for example, to cordon off "high crime areas" and search all the people on the street. Intrusions of this level, even for a limited search, require some degree of articulable individualized suspicion. *Terry* v. *Ohio*, 392 U.S. 1 (1968). Roadblock seizures for enforcing c. 90, § 24, are virtually sui generis in this regard.[3] Their constitutionality is based in large measure on the lower expectation of privacy traditionally accorded to the motoring public. See, e.g., *Commonwealth* v. *Ortiz*, *supra* at 357-358 & n.7, and cases cited; *People* v. *Scott*, *supra* at 525. We do not view our decision today as eroding the protection against unreasonable searches and seizures afforded by art. 14 and the Fourth Amendment.

Rather than eroding the constitutional protection against unreasonable search and seizure, our decision is consistent with precedent. Roadblock seizures have been upheld in the absence of individualized suspicion and without a showing of no equally effective yet less intrusive alternative. *United States* v. *Martinez-Fuerte*, *supra* at 545, 556-557 & n.12 (1976) (permanent roadblock conducted sixty-six miles from border to detect illegal aliens; less intrusive alternative analysis rejected). See *Delaware* v. *Prouse*, *supra* at 663 (indicating that roadblock stops of all oncoming traffic are permissible). In the analogous context of courthouse entry searches we have approved an initial search not based on articulable individualized suspicion so long as it "was no more intrusive than necessary." *Commonwealth* v. *Harris*, 383 Mass. 655, 657 (1981). In the case of roadblocks to enforce c. 90, § 24, compliance with the *Trumble* and *McGeoghegan* guidelines assures that the initial seizure is

---

[3] The strong State interest in eliminating "[t]he carnage caused by drunk drivers," *South Dakota* v. *Neville*, 459 U.S. 553, 558 (1983), sets roadblocks to enforce c. 90, § 24, apart from roadblocks for other purposes. Although the Supreme Court has indicated that roadblock seizures to enforce license and registration regulations do not violate the Fourth Amendment, *Texas* v. *Brown*, 460 U.S. 730, 739 (1983), it may well be, given the much lower State interest in assuring compliance with license and registration regulations, that roadblocks for that purpose are not permissible under art. 14.

no more intrusive than necessary. We perceive nothing in the prior decisions, nor anything in the nature of art. 14 or the Fourth Amendment, which requires the Commonwealth to disprove the existence of equally effective yet less intrusive alternatives to enforcing c. 90, § 24.

Although there is some support elsewhere for the defendant's position, the result we reach appears to be consistent with the weight of authority from other jurisdictions. Some courts which have addressed the constitutionality of roadblocks to prevent intoxicated driving have required a showing of no less intrusive yet equally effective alternatives. *State* v. *Superior Court*, 143 Ariz. 45, 48-49 (1984) (State sustaining its burden). *State* v. *Koppel*, 127 N.H. 286, 292 (1985) (State constitutional grounds). *Higbie* v. *State*, 723 S.W.2d 802, 805 (Tex. Crim. App. 1987). See *State* v. *Muzik*, 379 N.W.2d 599, 604 (Minn. Ct. App. 1985) (State must demonstrate either need for roadblock or its superiority to less intrusive alternatives). The majority of jurisdictions discussing the existence of other alternatives, however, either have rejected this requirement, *People* v. *Bartley*, 109 Ill. 2d 273, 287 (1985), cert. denied, 475 U.S. 1068 (1986), rev'g 125 Ill. App. 3d 575, 578 (1984), which had required a showing of no less intrusive yet equally effective alternative; *State* v. *Garcia*, 500 N.E.2d 158, 162-163 (Ind. 1986), cert. denied, 481 U.S. 1014 (1987), overruling *State* v. *McLaughlin*, 471 N.E.2d 1125 (Ind. Ct. App. 1984), which had required a showing of no less intrusive yet equally effective alternative; *Little* v. *State*, 300 Md. 485, 504-506 (1984); *People* v. *Scott*, *supra* at 528-529, or have indicated that the presence of such alternatives is merely one factor to be considered in determining the constitutional reasonableness of the roadblock seizures. *State* v. *Jones*, 483 So. 2d 433, 437-438 (Fla. 1986). *State* v. *Deskins*, 234 Kan. 529, 541 (1983).

Question one is answered in the negative. Question two therefore need not be reached. This case is remanded for proceedings consistent with this opinion.

LIACOS, J. (dissenting, with whom Lynch, J., joins). A review of the various decisions of the United States Supreme Court and of this court, dealing with the constitutionality of automobile roadblocks, reveals how the United States Supreme Court and, sadly, this court have slipped away from basic constitutional principles. Additionally, both the Federal decisions and our decisions offer an almost classic illustration of dictum building on dictum to become a rule of law. I write separately, in dissent, because I hope to refocus this debate on the fundamental principles of the jurisprudence of search and seizure law under both Federal and State Constitutions.

The fundamental principle under both the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights has been that no search or seizure is to be deemed "reasonable" unless based on a warrant issued on probable cause.[1] This rule, like any other rule of law, has its exceptions, but it is basic. Yet, the court cavalierly brushes this rule aside by stating erroneously that: "The basic issue is the reasonableness of the search, not the presence or absence of probable cause to believe evidence of a crime is likely to be found." *Ante* at 165 n.2. We are told that the test of a reasonable search or seizure is that of balancing the need to search or seize against the invasion of privacy which the search or seizure entails. It is true in this case, as well as in the companion case, *Commonwealth* v. *Lovelace, post* 1002 (1988),

---

[1] The Fourth Amendment states: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Article 14 of the Massachusetts Declaration of Rights states: "Every subject has a right to be secure from all unreasonable searches, and seizures, of his person, his houses, his papers, and all his possessions. All warrants, therefore, are contrary to this right, if the cause or foundation of them be not previously supported by oath or affirmation; and if the order in the warrant to a civil officer, to make search in suspected places, or to arrest one or more suspected persons, or to seize their property, be not accompanied with a special designation of the persons or objects of search, arrest, or seizure: and no warrant ought to be issued but in cases, and with the formalities prescribed by the laws."

decided this day,[2] that the parties also do not address this fundamental issue. It is true that this court did not come squarely to grips with this question in *Commonwealth* v. *McGeoghegan*, 389 Mass. 137 (1983), or in *Commonwealth* v. *Trumble*, 396 Mass. 81 (1985), or in *Commonwealth* v. *Amaral*, 398 Mass. 98 (1986).

Additionally, I do not believe that the court has faced up to the potential differences of result as matter of State constitutional law, but rather has followed the vacillating lead of the United States Supreme Court.[3] See, e.g., *McGeoghegan, supra* at 141 n.2 (same factors are material under Federal and State Constitutions; no discussion); *Trumble, supra* at 89-90 (seizure pursuant to *McGeoghegan* guidelines would be reasonable under State and Federal Constitutions; no discussion); *id.* at 96 n.3 (Abrams, J., concurring) (no separate argument made by defendants); *Amaral, supra* at 101 (roadblock invalid under art. 14 and probably so under Fourth Amendment for failure to meet *McGeoghegan* guidelines; no discussion of differences between State and Federal law — or of probable cause or the warrant requirements).

Let us start with a look at *McGeoghegan* in an effort to illustrate where we have gone astray. In that case we ruled that stopping a vehicle in a police roadblock "was a seizure within the meaning of the Fourth and Fourteenth Amendments." *McGeoghegan, supra* at 139. We also recognized that "[t]he reasonableness standard usually requires that the facts on which an intrusion is based be measured against probable cause, *Carroll* v. *United States*, 267 U.S. 132, 149 (1925), or, in limited instances, on articulable, reasonable suspicion focusing on the affected individual. *United States* v. *Brignoni-Ponce*, [422 U.S. 873, 881 (1975)]." *Id.* We acknowledged also the holding of *Delaware* v. *Prouse*, 440 U.S. 648 (1979),

---

[2] Justice Lynch and I disagree with the opinion in *Lovelace* for the reasons stated here.

[3] For a comprehensive analysis of the retreat of the United States Supreme Court from fundamental Fourth Amendment principles, see Wasserstrom, The Incredible Shrinking Fourth Amendment, 21 Am. Crim. L. Rev. 257 (1984).

that random stops for license and registration checks could not be justified absent "at least articulable and reasonable suspicion." *Id.* at 663.[4] We then went forward, in dictum, to build on the dictum in *Delaware* v. *Prouse*,[5] and set forth guidelines of reasonableness as to roadblocks.[6]

The dictum of *McGeoghegan*, built on the dictum of *Delaware* v. *Prouse*, seems to have become the rule shortly thereafter in *Commonwealth* v. *Trumble, supra.*[7] The court stated

---

[4] The Supreme Court held, in *Delaware* v. *Prouse, supra* at 663, as follows: "Accordingly, we hold that except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment."

[5] The dictum in *McGeoghegan* relied on is: "This holding does not preclude the State of Delaware or other States from developing methods for spot checks that involve less intrusion or that do not involve the unconstrained exercise of discretion. Questioning of all oncoming traffic at roadblock-type stops is one possible alternative. We hold only that persons in automobiles on public roadways may not for that reason alone have their travel and privacy interfered with at the unbridled discretion of police officers." *Delaware* v. *Prouse, supra.*

[6] In *McGeoghegan, supra* at 143-144, we said, by way of "observations": "For a roadblock to be permissible, it appears that the selection of motor vehicles to be stopped must not be arbitrary, safety must be assured, motorists' inconvenience must be minimized and assurance must be given that the procedure is being conducted pursuant to a plan devised by law enforcement supervisory personnel. While we do not suggest that advance notice is a constitutional necessity, advance publication of the date of an intended roadblock even without announcing its precise location, would have the virtue of reducing surprise, fear, and inconvenience. Such a procedure may achieve a degree of law enforcement and highway safety that is not reasonably attainable by less intrusive means. Also, while we do not suggest that roadblocks can only be constitutional if prescribed by statute or appropriate governmental regulation, we think that procedures conducted pursuant to such authorizations and standards would be more defensible than would other procedures."

It is worthy to note that the roadblock in *McGeoghegan* was ruled unconstitutional; Justice Nolan, the author of *Commonwealth* v. *Trumble*, 396 Mass. 81 (1985), dissented in *McGeoghegan.*

[7] *Trumble* came to the court on reservation and report of questions which focused on the validity of roadblock guidelines, not on the question of probable cause or the need of a warrant. The primary question reported

in *Trumble*, *supra* at 86: "It is well established that the stopping of each defendant's motor vehicle was a seizure within the Fourth and Fourteenth Amendments to the United States Constitution. *Delaware* v. *Prouse*, 440 U.S. 648, 653-654 (1979). Our inquiry becomes, therefore, whether the seizures were reasonable. *McGeoghegan*, *supra* at 139. *Accordingly, we must balance the public interest against 'the individual's right to personal security free from arbitrary interference by law officers.' United States* v. *Brignoni-Ponce*, 422 U.S. 873, 878 (1975)." (Emphasis supplied.) Thus, "balancing," not probable cause, reasonable and articulable suspicion, or the presence or absence of a warrant, became the test.[8] The court today falls into the same error when it states, *ante* at 164: "Decisions of this court and of the Supreme Court establish that there is 'no ready test for determining reasonableness other than by balancing the need to search [or seize] against the invasion which the search [or seizure] entails.' *Commonwealth* v. *Silva*, 366

---

was: "Were guidelines promulgated by the Secretary of Public Safety to govern drunk driving roadblocks properly promulgated and did they make adequate provisions so as not to offend the guarantees of the Fourth and Fourteenth Amendments to the United States Constitution, Articles 12 and 14 of the Massachusetts Declaration of Rights and Massachusetts General Laws, Chapter 41, Section 98?" *Id.* at 82.

Being the single justice who reported the questions in the form requested by the parties, I bear some responsibility for the limited nature of the court's response. The present case is also before the court on reported questions which limit arguably the range of our inquiry. See *ante* at 163-164. *Commonwealth* v. *Lovelace*, *post* 1002 (1988), is here on appeal, however, and the court's grouping of the two cases justifies the conclusion that all issues are open to us.

[8] Contrast this with the actual holding in *Delaware* v. *Prouse*, quoted in note 4, *supra*. Contrast this also with the actual holding in *Brignoni-Ponce*, that a roving patrol stop was unconstitutional, and holding also that, "when an officer's observations lead him reasonably to suspect that a particular vehicle may contain aliens who are illegally in the country, he may stop the car briefly and investigate the circumstances that provoke suspicion." *Brignoni-Ponce*, *supra* at 881. The Supreme Court's citation to *Terry* v. *Ohio*, 392 U.S. 1 (1968), and related cases, put "balancing" in proper context. The Court, referring to *Terry* and *Adams* v. *Williams*, 407 U.S. 143 (1972), indicated that a lesser standard of probable cause (articulable and reasonable suspicion) limits the nature and scope of the permissible seizure and intrusion.

Mass. 402, 405 (1974), quoting *Camara* v. *Municipal Court of the City of San Francisco*, 387 U.S. 523, 536-537 (1967) (administrative search). See *Trumble, supra* [at 86] (to determine reasonableness of seizure court balances 'the public interest against "the individual's right to personal security free from arbitrary interference by law officers,")' quoting *United States* v. *Brignoni-Ponce*, 422 U.S. 873, 878 (1975)." [9]

I have pointed out already the flaw in the *Trumble* reasoning. I add just a brief comment as to *Commonwealth* v. *Silva, supra*, which the court cites for support today. *Silva* was not a roadblock case but a stop and frisk case involving a disabled passenger vehicle. The ensuing search of the vehicle was held unlawful as being excessive, even though the initial stop was lawful. The "balancing" done in *Silva* was not as to the initiation of the stop (seizure), but as to the extent of the intrusion. *Silva* clearly adheres to the requirement of individualized suspicion and does not support the court's sweeping assertions in *Trumble*, or in the present case.

The court refers also to *Commonwealth* v. *Ortiz*, 376 Mass. 349 (1978), as further support for its position. In *Commonwealth* v. *Ortiz, supra* at 353, however, we stated: "The Commonwealth bears the burden of showing the existence of both probable cause to believe the car contained contraband and exigent circumstances to justify the seizure without a search warrant. See *Commonwealth* v. *Antobenedetto*, 366 Mass. 51, 57 (1974)." [10]

---

[9] The process I describe brings to mind the well-known comment of Justice Frankfurter, in *United States* v. *Rabinowitz*, 339 U.S. 56, 68 (1950) (Frankfurter, J., dissenting): "These decisions do not justify today's decision. They merely prove how a hint becomes a suggestion, is loosely turned into dictum and finally elevated to a decision. This progressive distortion is due to . . . uncritical confusion . . . ." *Id.* at 75.

[10] The court also states, *ante* at 167, that, "[i]n the analogous context of courthouse entry searches we have approved an initial search not based on articulable individualized suspicion so long as it 'was no more intrusive than necessary.' *Commonwealth* v. *Harris*, 383 Mass. 655, 657 (1981)." *Harris* does not support the court's position because (a) the "search" was not, as here, for the purpose of detection of crime (*Harris, supra*); and (b) the "search" was found to be consensual. *Id.* The fact that the limited intrusion in *Harris* was consensual was recognized in *McGeoghegan, supra*

To justify further its position, the court has referred in *Trumble*, and in this opinion, to the "strong public interest" (*Trumble, supra* at 86), in reducing the harm done by drunken drivers. The results the court reaches today are described as "sui generis," limited to this large social need, based also, in part, on the "lower expectations of privacy" accorded the motoring public. The approach taken here, we are assured, cannot be extended to "high crime areas." One must assume then that (under the Federal case law) only detection of aliens at fixed border roadblocks, see *United States* v. *Martinez-Fuerte*, 428 U.S. 543 (1976), and (under State law) apprehension of drunken drivers raise the level of public interest to the point where we shall put aside traditional rules and balance, instead, public interest against privacy interests. Does this mean that drug dealing and illegal possession of deadly weapons are lesser concerns? Or does it means that pedestrians are safe, but drivers and passengers are fair game? More likely, it means that "sui generis," however well meant, is an illusory promise.

Automobiles are not beyond the Fourth Amendment's protection. Consider these words in *Almeida-Sanchez* v. *United States*, 413 U.S. 266, 269 (1973), referring to the exception to the warrant requirement as to automobiles created by *Carroll* v. *United States*, 267 U.S. 132 (1925): "The *Carroll* doctrine does not declare a field day for the police in searching automobiles. Automobile or no automobile, there must be probable cause for the search."

The public's interest in barring the entry of illegal aliens and those interests involving enforcement of liquor laws, including the apprehension of drunken drivers, are not necessarily the same. The Court, in *Almeida-Sanchez, supra* at 274-275, recognized this when it quoted Chief Justice Taft in *Carroll* as follows: " 'It would be intolerable and unreasonable if a prohibition agent were authorized to stop every automobile on

---

at 140, where we said, as to *Harris*: "We recognized the search to be consensual in the same way as in the airport search cases . . . ." No argument is made that drivers explicitly or impliedly consent to roadblocks, and, despite its unfounded reliance on *Harris*, I do not understand the court to rest its decision on such a questionable premise.

the chance of finding liquor and thus subject all persons lawfully using the highways to the inconvenience and indignity of such a search. Travellers may be so stopped in crossing an international boundary because of national self protection reasonably requiring one entering the country to identify himself as entitled to come in, and his belongings as effects which may be lawfully brought in. But those lawfully within the country, entitled to use the public highways, have a right to free passage without interruption or search unless there is known to a competent official authorized to search, probable cause for believing that their vehicles are carrying contraband or illegal merchandise.' 267 U.S., at 153-154."

In *United States* v. *Ortiz*, 422 U.S. 891, 896-897 (1975), the Court invalidated a border checkpoint seizure and said: "A search, even of an automobile, is a substantial invasion of privacy. To protect that privacy from official arbitrariness, the Court always has regarded probable cause as the minumum requirement for a lawful search. *Almeida-Sanchez*, 413 U.S. at 269-270; *Chambers* v. *Maroney*, 399 U.S. 42, 51 (1970). We are not persuaded that the differences between roving patrols and traffic checkpoints justify dispensing in this case with the safeguards we required in *Almeida-Sanchez*. We therefore follow that decision and hold that at traffic checkpoints removed from the border and its functional equivalents, officers may not search private vehicles without consent or probable cause."

Unfortunately, all of its own strictures were abandoned by the Court in *United States* v. *Martinez-Fuerte*, 428 U.S. 543 (1976). There the Court, for the first time, upheld border checkpoint stops on the basis of the "substantiality of the public interest" and the impracticality of requiring reasonable suspicion as the basis of the stop. *Id.* at 556. Justice Brennan's statement in dissent should be our guide: "Consistent with this purpose to debilitate Fourth Amendment protections, the Court's decision today virtually empties the Amendment of its reasonableness requirement by holding that law enforcement officials manning fixed checkpoint stations who make standardless seizures of persons do not violate the Amendment. This holding cannot be squared with this Court's recent decisions

in *United States* v. *Ortiz*, [*supra*]; *United States* v. *Brignoni-Ponce*, 422 U.S. 873 (1975); and *Almeida-Sanchez* v. *United States*, [*supra*]. I dissent." *United States* v. *Martinez-Fuerte*, *supra* at 568-569 (Brennan, J., dissenting).

More recently, when this "sui generis" concept was extended to drug searches of boats on interior waterways, Justice Brennan commented in *United States* v. *Villamonte-Marquez*, 462 U.S. 579, 610 (1983) (Brennan, J., dissenting):[11] "In dissent in *Martinez-Fuerte*, I expressed my fear that the Court's decision was part of a 'continuing evisceration of Fourth Amendment protections against unreasonable searches and seizures.' 428 U.S. at 567. The majority chided me for my rhetoric and my 'unwarranted concern,' pointing out that its holding was expressly and narrowly limited: 'Our holding today, approving routine stops for brief questioning . . . is confined to permanent checkpoints.' *Id.* at 566 n.19. Today the Court breaks that promise. I dissent."[12]

In my view, the same lapses are infecting this court with a foreseeable expansion of the doctrine reiterated today. We have not hesitated to grant to our citizens greater protection under art. 14,[13] and we should do so here. In *Trumble*, Justice

---

[11] See also the Court's review of the automobile stop cases in *Villamonte-Marquez*, *supra* at 587-589.

[12] The danger inherent in the *Martinez-Fuerte* approach is even more strikingly illustrated by *INS* v. *Delgado*, 466 U.S. 210 (1984). There, the Court, for the first time, excluded altogether Fourth Amendment consideration from certain law enforcement encounters. The Court held that detailed interrogation of individuals during a factory raid by immigration service agents did not amount to a seizure, notwithstanding the presence of immigration agents moving systematically through the factory asking about immigration status, while other agents stationed themselves at every exit for the duration of a several hour raid. Justice Brennan recognized that "the Court has become so mesmerized by the magnitude of the [illegal immigration] problem that it has too easily allowed Fourth Amendment freedoms to be sacrificed." *Id.* at 239-240 (Brennan, J., concurring in part and dissenting in part). *Delgado* demonstrates all too clearly that constitutional reasoning in one context is ultimately inseparable from other contexts.

[13] See, e.g., *Commonwealth* v. *Blood*, 400 Mass. 61, 67-75 (1987) (electronic surveillance); *Commonwealth* v. *Ford*, 394 Mass. 421, 426 (1985) (inventory search of automobile); *Commonwealth* v. *Upton*, 394 Mass. 363, 373 (1985) (determination of probable cause). See also Murphy, The Role of

Lynch concluded his dissent (in which I joined), by asking the court to justify its departure from its "traditional concern" for privacy rights. He stated:

"The court's holding that the seizures at the Sunderland roadblocks were reasonable contrasts sharply with other decisions of this court concerning the scope of protection afforded by the Fourth Amendment. See, e.g., *Commonwealth* v. *Pietrass*, 392 Mass. 892, 898-900 (1984) (even though there was probable cause to arrest the defendant on charges of aggravated rape and other violent crimes, the Commonwealth failed to meet its burden of showing exigency, so the police were not justified in making a warrantless entry of a dwelling to arrest him); *Commonwealth* v. *Thibeau*, 384 Mass. 762, 763-764 (1981) (even though defendant was riding a bicycle, a known means of transporting illegal drugs, and made a sudden left turn as police cruiser approached, police lacked probable cause to arrest him and seize envelopes containing narcotics that were sticking out of his pocket); *Commonwealth* v. *Bacon*, 381 Mass. 642, 645-646 (1980) (police were not justified in making investigatory stop of relatively expensive motor vehicle operated by two youthful appearing men, even though one attempted to conceal his face, presumably from police view). I am unable to reconcile the court's ruling that the Commonwealth has sustained its burden in this case with the traditional concern this court has expressed for protecting Fourth Amendment rights. Here, the court concludes that the warrantless stop of 503 vehicles was justified even though the police lacked a basis for suspecting that any particular operator was or

Massachusetts State Constitutional Law in Litigation Strategies for the Trial of Drunk Driving Case under the "Safe Roads Act" of 1986, 72 Mass. L. Rev. 120 (1987).

If the court feels that the issues which I discuss have not been argued by the parties, the wiser course would be to set these cases down for reargument. Fundamental constitutional considerations ought not to be ignored because of the vagaries of the adversary system.

had been engaged in criminal activity. The court gives no satisfactory explanation for why it has suddenly lowered the threshold showing which the Commonwealth has traditionally been required to make to justify a warrantless stop or arrest." *Commonwealth* v. *Trumble*, 396 Mass. 81, 101-102 (1985).

Today's decision again fails to give a "satisfactory explanation" for "lower[ing] the threshold." Accordingly, I dissent.[14]

---

[14] I have not addressed the "less intrusive alternative" issue for two reasons: (1) Justice Lynch's dissent in *Trumble* covers the point fully; and (2) the need to address the issue of the basis of a seizure in the context of police roadblocks has seemed to me to be overriding. I remain, however, in accord with Justice Lynch's views on the point of less intrusive alternatives. Additionally, I have not addressed the warrant requirement. See *Almeida-Sanchez* v. *United States, supra* at 275, 282-285 (Powell, J., concurring). Cf. *Camara* v. *Municipal Court of the City of San Francisco*, 387 U.S. 523 (1967); *See* v. *Seattle*, 387 U.S. 541 (1967); *State* v. *Olgaard*, 248 N.W.2d 392, 395 (S.D. 1976). Compare *Opinion of the Justices*, 128 N.H. 14 (1986), with *State* v. *Koppel,* 127 N.H. 286 (1985).