## COMMONWEALTH vs. RYAN NATTOO.

No. 06-P-1332.

Hampshire. May 15, 2007. - October 31, 2007.

Present: COWIN, BROWN, & MEADE, JJ.

Further appellate review granted, 450 Mass. 1109 (2008).

*Constitutional Law,* Search and seizure. *Search and Seizure,* Expectation of privacy. *Firearms.*

A Superior Court judge erred in allowing the criminal defendant's motion to suppress evidence of a firearm that police found in one of several plastic garbage bags that the defendant had left by the side of a road, where the defendant had no reasonable expectation of privacy in the contents of the bags, and therefore, the inspection of the bags was not a search in the constitutional sense. [628-633]

INDICTMENT found and returned in the Superior Court Department on August 30, 2005.

A pretrial motion to suppress evidence was heard by *Mary-Lou Rup,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Robert J. Cordy,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

*Judith Ellen Pietras,* Assistant District Attorney, for the Commonwealth.

*Frederic G. Bartmon* for the defendant.

COWIN, J. The defendant, Ryan Nattoo, was charged with unlawful possession of a firearm after having been convicted previously of a serious drug offense. See G. L. c. 269, § 10G(*a*). He filed a motion to suppress evidence of the firearm (a loaded .32 caliber handgun) on the ground that the police had obtained the handgun in the course of an unlawful search of the defendant's property. A judge of the Superior Court conducted an evidentiary hearing and made findings of fact. On the basis of the

findings, she concluded that the defendant had a reasonable expectation of privacy with respect to the contents of several plastic garbage bags that he had left by the side of a road; the police lacked probable cause to search the bags; the search was not permissible as one incident to an arrest or as an inventory search; and, even were the search permissible as an inventory search, the police had not complied with the requirements of their department's written inventory policy. She accordingly allowed the defendant's motion to suppress evidence of the handgun.

The Commonwealth sought leave to prosecute an interlocutory appeal. See Mass.R.Crim.P. 15, as appearing in 422 Mass. 1501 (1996). Its petition was allowed by a justice of the Supreme Judicial Court, who referred the appeal to this court. The Commonwealth does not contest the judge's determinations that the police lacked probable cause to search the bags and that the search could not be justified as a search incident to an arrest. It challenges her conclusion that the defendant had a protected expectation of privacy in the bags. Alternatively, the Commonwealth argues that, even if such an expectation of privacy existed, the search was permissible as an inventory search that accompanied the defendant's arrest.

In our view, the defendant could not reasonably have expected that bags he left by the side of a street would remain insulated from examination by any member of the public, including the police. Consequently, the inspection of the bags that revealed the handgun was not a search in the constitutional sense, and we reverse the suppression order of the judge on that ground. We therefore do not address whether the examination of the bags qualifies as an inventory search or whether there was substantial compliance with the department's written inventory policy.

1. *Facts.* We are indebted to the motion judge for particularly clear and comprehensive findings. Most of her subsidiary findings are not challenged on appeal. We briefly summarize the relevant findings, supplemented in order to provide context by uncontested testimony from the motion hearing. Laura Tefft, who owned and resided in a two-bedroom mobile home located at 20 Robbins Road in Ware, sold the property on June 20, 2005, to Christopher DiMarzio, and agreed to vacate the prem-

ises the following day.[1] DiMarzio did not obtain the keys at the closing and was unable to gain entry to the mobile home for more than a week.

During that week, DiMarzio visited the property on several occasions and observed that the window shades of the mobile home were drawn and there appeared to be personal items remaining inside. On June 28, 2005, he posted a "no trespass" notice at the entrance of the mobile home. He returned on June 29, 2005, and found the door broken open and numerous bags, boxes, and plastic packing cartons (containing both valuable items and trash) strewn over the grounds. DiMarzio entered the mobile home and found the defendant sleeping on a sofa with personal belongings about. He awakened the defendant, who informed him that Tefft permitted him to reside there when he was in the area. DiMarzio advised the defendant that he had acquired the property and that the defendant would have to leave. The defendant responded that he knew Tefft intended to sell the property, agreed to leave, but requested some time to collect his belongings.

When the defendant then appeared to be taking no action to vacate, DiMarzio called the Ware police. Sergeant Henry Gagnon and Officer Peter Harder responded and found the defendant outside the mobile home. At the officers' request, the defendant produced identification in the form of a credit card carrying the name "Brian Thomas."[2] The police repeated DiMarzio's order that the defendant leave; the defendant repeated his request for time to remove his possessions; with DiMarzio's consent, the police agreed.

The defendant proceeded to place various personal effects into three or four large plastic trash bags, then carried the bags and a television set down the driveway to the edge of the property.[3] He placed the bags and the television set on one side of the driveway next to the road and near a mailbox. On the

---

[1]Tefft disputed this, claiming that DiMarzio had given her to July 1, 2005, to vacate. The judge credited DiMarzio's testimony that Tefft was required to leave by June 21, 2005.

[2]There was also testimony that the defendant identified himself as "Walter."

[3]There is no dispute that the items in question belonged to the defendant. Tefft never contended that any of the items belonged to her. The judge found that the defendant was a lawful occupant of the mobile home, at least while it

other side of the driveway, there were several large plastic bags that contained trash. The judge found that the defendant then advised the police that he intended to call someone to pick him up with his belongings, and that he in fact made a cellular telephone call to his girlfriend, later identified as Chelsea Stokosa, for that purpose.[4]

At this point, Gagnon began to suspect that the defendant had given false identification and, aware that Officer Shawn Crevier had had previous encounters with the occupants at the mobile home, contacted Crevier to obtain assistance in identifying the defendant. Crevier arrived, and recognized the defendant as "Ryan Nattoo." A computer check revealed the existence of an outstanding warrant for the defendant's arrest that had been issued for his alleged default of a payment obligation arising out of charges that included illegal possession of a firearm.

Gagnon returned to the police station to cover for Crevier, who remained at the scene and arrested the defendant on the outstanding warrant. The defendant did not ask to take the bags or the television set with him,[5] and he was transported to the police station without his belongings, which remained by the side of the road. Harder, the last police officer at the scene, then departed. DiMarzio set about to secure the mobile home, when he noticed the defendant's belongings near the roadside mailbox. He called the police station and alerted Crevier to the existence of the bags. Without informing the defendant, Crevier returned to 20 Robbins Road to retrieve the defendant's property. Before placing the bags into his police cruiser, he opened each one to inspect its contents. Coming upon a heavy black pouch, he opened the pouch and found the loaded handgun that led to the present charge.[6]

2. *Reasonable expectation of privacy.* The Fourth Amend-

was owned by Tefft, and DiMarzio claimed no interest in the items either on a theory that they had been abandoned or otherwise.

[4]The Commonwealth challenges the finding that the police knew that the defendant had made arrangements to have his property picked up. For the reasons that we state *infra*, the finding is of no consequence to the outcome.

[5]This was hardly surprising, given that one of the bags contained the handgun that led to his indictment.

[6]The judge made further findings regarding the absence of compliance with the department's inventory procedures once the defendant's belongings were

ment to the Constitution of the United States and art. 14 of the Massachusetts Declaration of Rights protect against unreasonable searches or seizures by agents of the government. Not every examination of an individual's property, however, is considered a search for this purpose (i.e., a search in the constitutional sense). "[W]hether a search in the constitutional sense has taken place . . . turns on whether the police conduct has intruded on a constitutionally protected reasonable expectation of privacy." *Commonwealth* v. *Montanez*, 410 Mass. 290, 301 (1991). "The measure of the defendant's expectation of privacy is (1) whether the defendant has manifested a subjective expectation of privacy in the object of the search, and (2) whether society is willing to recognize that expectation as reasonable." *Ibid.* See *Commonwealth* v. *Panetti*, 406 Mass. 230, 231 (1989); *Commonwealth* v. *Mamacos*, 409 Mass. 635, 638 (1991). Thus, a reasonable expectation of privacy has both a subjective and an objective component.

The Commonwealth agrees that the defendant did not abandon the bags and that his apparent intention to preserve them manifested a subjective expectation that their contents would remain private. The defendant requested permission to remove his personal items from the mobile home; he placed them in trash bags and carried them to the road; and he made arrangements with a third party to pick him up with his property. This is not a case in which the defendant voluntarily abandoned the bags or their contents. See, e.g., *Commonwealth* v. *Small*, 28 Mass. App. Ct. 533, 535 (1990) (airline passenger who retained claim ticket did not abandon luggage by fleeing from airport and not returning for three hours). Contrast *Commonwealth* v. *Netto*, 438 Mass. 686, 698 (2003) (belongings deemed abandoned in motel room when defendants manifested no intention to return to room); *Commonwealth* v. *Bly*, 448 Mass. 473, 489-491 (2007) (defendant manifested no expectation that property would remain private). Nor can it be considered the equivalent of trash disposal, where we have concluded that a defendant surrenders his pos-

brought to the police station. Because we do not reach the question whether Crevier's examination of the bags qualified as an inventory search, it is unnecessary to address the Commonwealth's appeal from the judge's rulings on the subject.

sessory interest in an item when he places it out with the trash, thereby exposing it to any passerby. See *Commonwealth* v. *Pratt,* 407 Mass. 647, 660 (1990). See also *California* v. *Greenwood,* 486 U.S. 35, 40 (1988).

The reason that the defendant's motion to suppress fails is because of his inability to establish that his subjective expectation of privacy was reasonable. Unlike certain exceptions to the warrant requirement, where the burden of demonstrating that an exception applies is allocated to the Commonwealth, here the defendant "must bear the threshold burden of showing that a warrantless search or seizure occurred." *Commonwealth* v. *Bly,* 448 Mass. at 490, citing *Commonwealth* v. *D'Onofrio,* 396 Mass. 711, 714-715 (1986). Put differently, before a defendant may thrust on the Commonwealth the burden of justifying why a warrant was not obtained, that defendant must establish initially that a search in the constitutional sense has occurred. See *Commonwealth* v. *D'Onofrio, supra* at 714 ("Unless the defendants had a reasonable expectation of privacy at [the premises] when the officer made observations there, there was no 'search' within the meaning of the Fourth Amendment"). In these circumstances, the defendant must demonstrate both that he had a subjective expectation of privacy and that society would recognize such expectation as reasonable. See *Commonwealth* v. *Mamacos,* 409 Mass. at 639; *Commonwealth* v. *Montanez,* 410 Mass. at 301.

"[O]ur duty is to make an independent determination of the correctness of the judge's application of constitutional principles to the facts as found." *Commonwealth* v. *Scott,* 440 Mass. 642, 646 (2004), quoting from *Commonwealth* v. *Mercado,* 422 Mass. 367, 369 (1996). The judge appears to have equated her warranted findings that the defendant did not abandon the property and that he subjectively expected that it would remain private with a finding that his expectation in this regard was reasonable. She buttressed this determination by several references to her separate finding that the police were aware that the defendant had made arrangements to have the bags collected by an acquaintance. She stated, in this regard, that "[t]he defendant did not voluntarily surrender control over the bags in any way to demonstrate that he had relinquished any continued expectation of privacy in their contents."

The defendant indeed may not have relinquished his purpose, which was to retain the property without interference by others. He did, however, surrender control of the property in a manner that was inconsistent with a reasonable expectation that the bags would be left undisturbed. "In evaluating the reasonableness of an individual's expectation of privacy, we look to a number of factors, including . . . whether the defendant controlled access to the area . . . and whether the area was freely accessible to others." *Commonwealth* v. *Montanez,* 410 Mass. at 301-302. "[A]n individual can have only a very limited expectation of privacy with respect to an area used routinely by others." *Sullivan* v. *District Ct. of Hampshire,* 384 Mass. 736, 742 (1981). We look also to whether a defendant "has taken normal precautions to protect his privacy." *Commonwealth* v. *Berry,* 420 Mass. 95, 106-107 & n.9 (1995) (cigarettes and matches left on counter in public area of police station; expectation of privacy not reasonable).

Here, the defendant left his property by the side of the road. He could not reasonably have been confident that the bags would not be taken by a traveler who thought that the contents had been discarded, or who had no concern whether the bags belonged to another. Nor could he rely reasonably on an assumption that a passerby would not look in the bags. While, as the judge noted, there was no evidence regarding the level of use of the road, it is not disputed that the road was available for public use. "It is well established that, in general, government agents may make a warrantless search of areas in which the public has free access . . . ." *Commonwealth* v. *Krisco Corp.,* 421 Mass. 37, 42-43 (1995), citing *United States* v. *Hall,* 47 F.3d 1091, 1095 (11th Cir.), cert. denied, 516 U.S. 816 (1995). The facts here differ considerably from those of *Commonwealth* v. *Straw,* 422 Mass. 756, 758-762 (1996) (locked briefcase thrown into fenced-in curtilage), and *Commonwealth* v. *Small,* 28 Mass. App. Ct. at 535-536 (reasonable expectation of privacy where luggage in airline transit unclaimed for three hours). The police had no less a right to look in the bags, or to carry them away, than did any passerby.[7]

These considerations are not altered by the fact that the

---

[7] We are not persuaded by, and give no weight to, the Commonwealth's

defendant was separated from his belongings by action of the police. We accept the findings of the motion judge that the defendant was required by the owner to leave the mobile home (where he could otherwise presumably have safeguarded the bags); the defendant made arrangements with a friend to pick him up with his belongings; the police knew this; and the defendant would have kept watch over the bags had not the police arrested him and removed him from the scene. The police did nothing unlawful insofar as the arrest was concerned. They had a warrant which identified the defendant and they executed it. They neither prompted nor coerced the defendant to leave the bags next to a street. See *Commonwealth* v. *Cabral*, 69 Mass. App. Ct. 68, 74 (2007). That was his choice, one perhaps imposed on him by the fact that he had been ousted from the mobile home, but not one for which the police bore any legally enforceable responsibility.

We are aware of no requirement that, when the police are empowered to arrest, they do so at the convenience of the defendant. In the present case, the police were not obligated to wait at the scene with the defendant until his friend arrived to collect the bags. Compare *Commonwealth* v. *Ellerbe*, 430 Mass. 769, 776 (2000) (police not required to guard vehicle or wait with unlicensed passenger until licensed driver could be produced). Nor were they required to safeguard the bags for him. While an inventory search of an arrestee is permissible, it is not required. Furthermore, it is ordinarily made with respect to the arrestee's physical person, his clothing, or the articles he is carrying, see *Commonwealth* v. *Wilson*, 389 Mass. 115, 117 (1983); *Commonwealth* v. *Vuthy Seng*, 436 Mass. 537, 550, cert. denied, 537 U.S. 942 (2002); Grasso & McEvoy, Suppression Matters Under Massachusetts Law § 15-4(a) (2006-2007 ed.), not separate belongings that the arrestee does not bring to the police station. The police had no duty to transport the bags to

argument that the defendant's use of large plastic bags similar to those that carry trash is sufficient by itself to justify a finding that he had no reasonable expectation of privacy. The suggestion, if adopted, would subject many individuals to police scrutiny merely on the basis of the containers in which they place their belongings. What is important is not the container, but rather the area in which the items are left and the defendant's ability to control that area. See, e.g., *Commonwealth* v. *Krisco Corp.*, 421 Mass. at 42-45.

the police station (at which point, an inventory search would have disclosed the handgun in any event), or otherwise to safeguard the bags. They were free to leave the bags by the street, as they did, at which time any objectively reasonable expectation of privacy on the part of the defendant vanished.

3. *Conclusion.* The defendant did not satisfy his burden to demonstrate that he had a reasonable expectation of privacy with respect to the contents of bags that he left by the roadside. Officer Crevier's examination of the bags was therefore not a search in the constitutional sense. See *United States* v. *Salvucci,* 448 U.S. 83, 91-92 (1980). Accordingly, the order allowing the defendant's motion to suppress evidence of the handgun found in one of the bags is reversed, and the case is remanded to the Superior Court for further proceedings.

> *Order allowing motion to sup-*
> *press reversed.*