## Commonwealth *vs.* Ryan Nattoo.

Hampshire. October 7, 2008. - January 6, 2009.

Present: Marshall, C.J., Ireland, Spina, Cordy, & Botsford, JJ.

*Constitutional Law,* Search and seizure. *Search and Seizure,* Expectation of privacy. *Firearms.*

A Superior Court judge erred in granting a criminal defendant's motion to suppress evidence of a loaded firearm found by a police officer during a warrantless search, where the Commonwealth had satisfied its burden of proving that the search and resulting seizure were reasonable, given that the officer had found the firearm while searching unlabeled garbage bags left unattended by the defendant on the side of a public street, and given that the officer knew that the defendant had just been arrested on an outstanding warrant involving a firearms charge, and the search thus served to ensure the officer's personal safety before he undertook to transport the defendant's belongings to the police station where the defendant was being held. [831-832]

Indictment found and returned in the Superior Court Department on August 30, 2005.

A pretrial motion to suppress evidence was heard by *Mary-Lou Rup,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Frederic G. Bartmon* for the defendant.

*Judith Ellen Pietras,* Assistant District Attorney, for the Commonwealth.

*Lisa Kavanaugh,* Committee for Public Counsel Services, for Committee for Public Counsel Services, amicus curiae, submitted a brief.

Ireland, J. The defendant was charged with unlawful possession of a firearm after having been convicted previously of a serious drug offense. See G. L. c. 269, § 10G (*a*). After an evidentiary hearing, a Superior Court judge granted the defendant's motion to suppress evidence of the firearm (a loaded .32 caliber

handgun). The Commonwealth sought leave to file an interlocutory appeal, see Mass. R. Crim. P. 15 (a) (1), as appearing in 422 Mass. 1501 (1996), which was allowed by a single justice of this court and was reported to the Appeals Court. The Appeals Court reversed, see *Commonwealth* v. *Nattoo*, 70 Mass. App. Ct. 625, 633 (2007), and we granted the defendant's application for further appellate review. We reverse.

We summarize the judge's findings of fact, with minor supplementation from uncontested testimony. See *Commonwealth* v. *Wilson*, 441 Mass. 390, 393 (2004) ("In reviewing a ruling on a motion to suppress evidence, we accept the judge's subsidiary findings of fact absent clear error . . ."). Laura Ann Tefft, who owned and resided in a two-bedroom mobile home located at 20 Robbins Road in Ware, sold the property on June 20, 2005, to Christopher DiMarzio. Tefft had agreed to vacate the premises, and to remove all personal property from the premises, by June 21, 2005. She did not inform DiMarzio that she had allowed others to reside with her in the mobile home. Prior to the closing, DiMarzio had viewed the property, but saw no evidence of any other person living with Tefft. At the closing, DiMarzio did not obtain the keys to the mobile home. DiMarzio purchased the property for the land, intending to demolish the mobile home soon after the closing.

After the closing, DiMarzio visited the property. The mobile home was locked, and its window shades were drawn. DiMarzio could not discern if the mobile home was occupied. After consulting with his attorney and the local police, DiMarzio returned to the property and posted a "no trespass" notice on a door to the mobile home.

On June 29, DiMarzio returned to the property. The frame and latch to the mobile home's front door were broken, and it appeared that the door had been kicked open. DiMarzio entered and found the defendant sleeping on a sofa with personal effects strewn about. DiMarzio woke the defendant and informed him that he was trespassing. DiMarzio asked the defendant to leave and indicated that the police were coming. The defendant stated that he stayed with Tefft when in the area, and asked for some time to collect his belongings. DiMarzio left the mobile home. About fifteen minutes later, DiMarzio telephoned the Ware police.

Sergeant Henry Gagnon and Officer Peter Harder responded. When the officers arrived, the defendant was outside the mobile home, talking to someone on his cellular telephone. The officers spoke with DiMarzio, who agreed to allow the defendant back inside the mobile home to remove his personal property. At the request of the officers, the defendant produced identification that, unbeknownst to them at that time, was false.

The police observed the defendant fill three or four large garbage bags with personal items. The defendant placed the bags and a television set on the edge of the public road that bordered DiMarzio's property alongside one side of his driveway.[1] On the other side of the driveway were several large plastic bags containing trash. The defendant told the officers and DiMarzio that he needed to telephone someone for a ride. Using his cellular telephone, the defendant asked his girl friend to come get him and his belongings. Officer Harder overheard this portion of the defendant's conversation. None of the officers, however, heard or were informed of the defendant's girl friend's response, namely, that she would not be able to retrieve his belongings right away and that "it was going to take [her] a while." The defendant did not say anything to the officers about a timetable for having his belongings moved.

Sergeant Gagnon came to suspect that the defendant had not provided them with his true name. Aware that another officer, Shawn R. Crevier, previously may have had contact with Tefft and the defendant, Sergeant Gagnon contacted Officer Crevier and requested that he report to the scene. After requesting information through the warrants management system, Sergeant Gagnon learned that there was an outstanding warrant on an unrelated firearms offense for the man he suspected as being the defendant.

---

[1] The judge's finding that the defendant placed his belongings on the edge of DiMarzio's property is clearly erroneous. The only witnesses who testified on the matter (DiMarzio, Officer Harder, and Officer Crevier) stated that the defendant had left his belongings on the side of the road, near, but not on, DiMarzio's property. There was no evidence introduced to the contrary (the defendant did not testify at the evidentiary hearing held on his motion). "Disbelief of testimony is not the equivalent of proof of facts contrary to that testimony." *Commonwealth* v. *Haggerty*, 400 Mass. 437, 442 (1987), quoting *Boice-Perrine Co.* v. *Kelley*, 243 Mass. 327, 330 (1923). In the defendant's memorandum in support of his motion to suppress, the defendant stated that he had left his belongings "on the side of the public road."

Officer Crevier arrived and recognized the defendant as Ryan Nattoo, which was not the name the defendant had given to the other officers. Having been given the information about the outstanding warrant, which was for the defendant, Officer Crevier, on arriving at DiMarzio's property, advised the defendant of the outstanding warrant and arrested him. Sergeant Gagnon went to the Ware police station. Separately, Officer Crevier transported the defendant to the Ware police station.[2] Officer Harder left the property in response to another call.

Meanwhile, DiMarzio secured the trailer. He noticed the defendant's bags and television on the side of the road next to his property and telephoned the police station. DiMarzio spoke with Officer Crevier and asked him to retrieve the defendant's belongings. Without informing the defendant, Officer Crevier returned to the property and DiMarzio directed him over to the road to the bags left by the defendant. Officer Crevier inspected the contents of the defendant's bags. In one of the bags, inside a black pouch that was heavy, Officer Crevier found a loaded .32 caliber handgun. The discovery of that handgun led to the present charge.

Officer Crevier brought all the bags, and the television, to the Ware police station. He photographed the items removed from the bags and listed them in a police report. The applicable written inventory policy for "detainee processing" of the Ware police department (inventory policy) provides, in pertinent part, as follows:

"1. An inventory search of the detainee shall be conducted.

"a. Any container or article found on the detainee's person or carried by him/her shall be opened and its contents inventoried.

"b. Papers, documents or other writings found on the detainee's person may be examined to determine his/her identity, ensure his/her physical safety, ensure

[2]The parties dispute whether Officer Crevier knew that the defendant had left behind his belongings in the garbage bags. The record supports the judge's finding that Officer Crevier had been informed that the defendant left some of his items by the road with the intent that they would be picked up by his girl friend.

the removal of items dangerous to cell administration, and protect the department from charges of theft.

"2. REPORT: The officer conducting the search shall complete a written inventory report, in a form designated by the department, listing in detail all of the property belonging to and taken from the arrestee during the search.

"a. The report shall be signed by the arrestee and witnessed. (If the arrestee refuses to sign the report, that fact should be noted on the report.)"

A copy of the inventory policy was entered in evidence at the evidentiary hearing on the motion to suppress.

About two weeks later, the defendant went to the police station requesting the return of his belongings. A property receipt report was prepared that listed the items found in the defendant's bags, as well as the television. The defendant signed the form, indicating that the items listed (except the handgun) were returned to him.

Insofar as relevant here, the defendant moved to suppress the handgun, arguing that the warrantless search of his belongings in the bags was unlawful.[3] He claimed that he had a reasonable expectation of privacy in the bags. He also maintained that a search of the bags was not warranted on account of exigent circumstances, an exception to the warrant requirement, or the department's inventory policy.

On the basis of her findings, the judge concluded that Officer Crevier lacked probable cause to search the garbage bags and that the search was not one incident to the defendant's arrest. The judge went on to reason that the defendant's belongings did not amount to abandoned property because the police officers knew

[3]While the defendant referenced the Fourth Amendment to the United States Constitution in his motion to suppress, he made no mention of its cognate provision in art. 14 of the Massachusetts Declaration of Rights which, in some instances, provides greater protection in the area of searches and seizures than does the Fourth Amendment. See *Commonwealth* v. *Shields,* 402 Mass. 162, 164 n.1 (1988). In his motion, the defendant cited art. 12 of the Massachusetts Declaration of Rights, but made no argument concerning its application, nor any argument that it would provide greater protection in kind than the Fourth Amendment.

that he had made arrangements for the removal of the bags. The judge concluded that the defendant had a reasonable expectation of privacy with respect to the contents of the bags.

The judge rejected the Commonwealth's argument that the police conducted a proper inventory search. The search was not permissible as an inventory search because, she concluded, the bags searched were not in the possession of, or carried by, the defendant at the time of his arrest. In addition, Officer Crevier failed to follow the department's inventory policy by preparing a written inventory report at the time he searched the bags or at the time he arrived at the police station with the bags. The judge concluded that the search was a pretext for a general investigatory search, and allowed the defendant's motion to suppress the handgun.

The Appeals Court reversed, concluding that there was no search in the constitutional sense because "the defendant could not reasonably have expected that bags he left by the side of a street would remain insulated from examination by any member of the public, including the police." *Commonwealth* v. *Nattoo*, 70 Mass. App. Ct. 625, 626, 633 (2007). Thus, as reasoned by the Appeals Court, the defendant was unable "to establish that his subjective expectation of privacy was [objectively] reasonable," a component necessary to a protected expectation of privacy. *Id.* at 630. See *Commonwealth* v. *Montanez*, 410 Mass. 290, 301 (1991).

1. As has been noted, "[i]n reviewing a ruling on a motion to suppress evidence, we accept the judge's subsidiary findings of fact absent clear error . . . ." *Commonwealth* v. *Wilson*, 441 Mass. 390, 393 (2004). "We review independently the application of constitutional principles to the facts found." *Id.*

We treat the defendant's motion to suppress as based solely on the Fourth Amendment to the United States Constitution. See note 3, *supra*. "The Fourth Amendment proscribes unreasonable searches and seizures. The United States Supreme Court has construed the Fourth Amendment to make any government seizure and search of personal property, located in an area where the owner has a legitimate expectation of privacy, per se unreasonable unless accomplished pursuant to a properly issued warrant."

*Commonwealth* v. *Straw*, 422 Mass. 756, 758 (1996), and cases cited.

The touchstone of a Fourth Amendment analysis is reasonableness. *Commonwealth* v. *Shields*, 402 Mass. 162, 164 (1988). See *Pennsylvania* v. *Mimms*, 434 U.S. 106, 108 (1997), citing *Terry* v. *Ohio*, 392 U.S. 1, 19 (1968). "Decisions of this court and of the Supreme Court establish that there is 'no ready test for determining reasonableness other than by balancing the need to search [or seize] against the invasion which the search [or seizure] entails.' " *Commonwealth* v. *Shields, supra,* quoting *Commonwealth* v. *Silva*, 366 Mass. 402, 405 (1974). The Commonwealth has satisfied its burden of proving that the search, and resulting seizure of the handgun, was reasonable. See *Commonwealth* v. *Shields, supra.* The defendant left his unsecured and unlabeled belongings unattended on the side of a public road knowing that neither he nor his girl friend would be able to get to them for some time. Indeed, the bags remained unattended when Officer Crevier returned, at DiMarzio's request, to retrieve them. Moreover, Officer Crevier knew the defendant had been arrested on an outstanding warrant that involved a firearms charge; his search of the bags served to ensure his personal safety before he undertook to transport the defendant's belongings to the police station. Ensuring the safety of police officers and the public are paramount government concerns that outweigh the minimal invasion (that could have been undertaken by any passerby) of searching unsecured and unlabeled belongings that the defendant knowingly left unattended on the side of a public road. Based on the unique facts of this case, we conclude that the search and seizure that occurred here was entirely reasonable and did not offend Fourth Amendment principles. The defendant's loaded handgun should not have been suppressed.

2. The order granting the defendant's motion to suppress evidence of the firearm is reversed, and the case is remanded to the Superior Court for further proceedings.

*So ordered.*