COMMONWEALTH *vs.* LUTHER SMALL.

No. 89-P-1145.

Suffolk. February 9, 1990. - April 17, 1990.

Present: WARNER, C.J., ARMSTRONG, & PERRETTA, JJ

*Search and Seizure*, Expectation of privacy, Luggage, Exigent circumstances. *Privacy. Constitutional Law*, Search and seizure.

At the hearing on a defendant's motion to suppress, no evidence was presented from which an inference could rationally be drawn that the defendant disclaimed ownership of or abandoned his interest in two pieces of luggage before the police had opened and searched them. [535-536]

There were no exigent circumstances to justify police officers' opening two pieces of luggage unclaimed for three hours at an airport during normal weekday working hours of the District Court, where the bags were held in an office to which the public did not have access and where there was ample time to secure a warrant. [536-537]

INDICTMENTS found and returned in the Superior Court Department on April 5, 1989.

A pretrial motion to suppress evidence was heard by *Guy Volterra*, J.

The Commonwealth's application for an interlocutory appeal was allowed by *Greaney*, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was transferred by him to the Appeals Court.

*Daniel M. Marposon*, Assistant District Attorney, for the Commonwealth.

*John J. Courtney* for the defendant.

PERRETTA, J. This is an appeal by the Commonwealth from an order of the Superior Court allowing the defendant's motion to suppress drugs and a gun found in his luggage which was searched by the police without a warrant at Logan Airport. The judge made findings of fact upon which he concluded that the defendant had a reasonable expectation of

privacy in his luggage, which he did not abandon, and that the warrantless search was not justified by exigent circumstances. We affirm.

1. *The Facts.*

We recite the judge's findings of fact, which the Commonwealth does not challenge. On March 21, 1989, a surveillance team led by State police detective Andrew Palombo was at Logan Airport awaiting the anticipated 11:00 A.M. arrival of a Braniff airline flight from Los Angeles. Palombo had earlier that day received information from branch offices of the Federal Drug Enforcement Agency that a suspected drug courier was a passenger on that flight. His two pieces of luggage and corresponding claim tickets had been identified from information given by the airline. The police also had been given a description of the suspect's physical appearance.

One officer positioned himself at the arrival gate while others, including Palombo, were in the luggage carousel area with Casey, a dog trained to sniff out narcotics. When the two pieces of luggage came through on the carousel, Casey grabbed one of the pieces in his teeth and shook it violently. In the meantime, after the defendant, who matched the description of the suspect, came through the passenger gate, he made a telephone call and fled from the terminal with an officer in pursuit. Members of the surveillance team searched throughout the airport for the defendant for almost three hours, without success.

Back at the luggage area, the defendant's bags remained on the carousel for about forty-five minutes before Braniff employees brought them to an alcove used for unclaimed luggage. The general public had access to the alcove. Two hours later, about 2:00 P.M., Palombo ordered that the luggage be removed from the alcove and brought to one of Braniff's offices.

As noted by the judge, the bags were then opened by Palombo, a detective of seventeen years' experience, "during the normal weekday working hours of the East Boston Division of the District Court Department." Upon opening the bags, Palombo found a substance he believed to be cocaine, a

loaded .357 magnum, a medicine vial, and a Los Angeles parking ticket. The defendant's name appeared on the vial and ticket. The bags were then taken to the airport State police office.

That evening, "someone" made inquiry of a Braniff employee as to the whereabouts of the luggage. Pursuant to Palombo's plan, the employee directed this person to the Braniff office where Palombo was waiting just outside the door. When the defendant appeared, Palombo asked him if he was claiming the luggage. The defendant said nothing. Palombo went into the office and returned with the bags, but the defendant had departed.

Two days later, Palombo was again alerted by a Braniff employee that a person was at the counter to claim the luggage. Palombo and other officers went to the counter area and watched as the defendant took possession of the bags. When Palombo walked up to the defendant, he dropped the bags, stating, "These are not mine!"

2. *Expectation of Privacy.*

"For a search to have taken place, the defendant must have had a subjective expectation of privacy, and that expectation must have been one that society recognizes as objectively reasonable." *Commonwealth* v. *Pina*, 406 Mass. 540, 544 (1990), and cases therein cited. The Commonwealth argues that because the defendant used an assumed name in purchasing his ticket and fled from the terminal without claiming his luggage, any expectation of privacy that the defendant might have had in the bags had diminished so significantly as to be no longer reasonable.

We think it reasonable for an airline traveler in possession of claim tickets to expect that his luggage will not be subject to invasion if unclaimed for three hours. See *United States* v. *Tolbert*, 692 F.2d 1041, 1044 (6th Cir. 1982); *Commonwealth* v. *Panetti*, 406 Mass. 230, 231-235 (1989). Compare *Commonwealth* v. *Chappee*, 397 Mass. 508, 512-513 (1986); *Commonwealth* v. *Pina*, 406 Mass. at 544; *Commonwealth* v. *Royce*, 20 Mass. App. Ct. 221, 224-225 (1985).

What the Commonwealth is really arguing is that at the time the police opened the bags, the defendant had abandoned them, thereby making it unnecessary to obtain a warrant. " 'Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts.' " *Commonwealth* v. *Paszko*, 391 Mass. 164, 184 (1984), quoting from *United States* v. *Colbert*, 474 F.2d 174, 176 (5th Cir. 1973). There is nothing in the record before us to show that the defendant saw the police watching and following him. Even if we infer that the defendant was alerted to the police surveillance during his telephone call, all that follows the alert is his rapid departure from the terminal without his luggage but with his claim tickets. These facts, even when coupled with the defendant's failure to retrieve his luggage within three hours, while perhaps sufficient to show probable cause for the issuance of a search warrant, do not require a conclusion that the defendant had abandoned his luggage. See *United States* v. *Tolbert*, 692 F.2d at 1044. Compare *United States* v. *Miller*, 589 F.2d 1117, 1131 (1st Cir. 1978); *United States* v. *Hawkins*, 681 F.2d 1343, 1345 (11th Cir. 1982); *United States* v. *McKennon*, 814 F.2d 1539, 1546 (11th Cir. 1987); *Commonwealth* v. *Lanigan*, 12 Mass. App. Ct. 913, 914 (1981).

Further, the Commonwealth's claim of abandonment based upon the defendant's dropping of the bags and disclaiming ownership is unpersuasive. The bags had been opened two days earlier. Those cases cited by the Commonwealth in support of its argument (*Miller, Hawkins,* and *McKennon*) are inapposite. In two of the cases, the defendants disclaimed ownership of or interest in the bags *before* they were opened. In that case where the bags were opened before any verbal disclaimer, there were other acts by the defendant to support an inference of disclaimer or abandonment.

3. *Exigent Circumstances.*

To support the warrantless search, the Commonwealth claims that the luggage had to be opened without a warrant because of the following exigent circumstances. It was necessary to ascertain the defendant's identity "in order to block

his escape and to apprehend him." Moreover, it was necessary to apprehend the defendant quickly because the police reasonably could assume that were the defendant in possession of a gun, he would have placed the gun in his luggage "to avoid detection (from metal detectors)." Finally, because the defendant made a telephone call prior to his "sudden departure" from the terminal, the police could have assumed that he "may have been acting in concert with others who had access to the drugs and weapon in the luggage." We see no exigent circumstances. See generally *Commonwealth* v. *Huffman*, 385 Mass. 122 (1982); *Commonwealth* v. *Hamilton*, 24 Mass. App. Ct. 290 (1987); *Commonwealth* v. *Bates*, *ante* 217 (1990). Assuming that the defendant fled because he was aware of the police surveillance, he made good his escape. The police did not open the bags until after their three-hour "relentless hunting" for the defendant proved futile. Nor is there any force to the argument that others with whom the defendant "may have been acting in concert" would have access to the bags. At the time the bags were opened, they had been brought to a private office where they remained until, later that evening, the defendant was directed to the office. Throughout this entire time period, the public did not have access to the bags and the police had ample time to secure a warrant. See *United States* v. *Chadwick*, 433 U.S. 1, 13 (1977); *Commonwealth* v. *Hamilton*, 24 Mass. App. Ct. at 293-294.

> *Order granting motion to*
> *suppress affirmed.*