COMMONWEALTH *vs.* MARLON A. STRAW.

No. 94-P-318

Suffolk. January 23, 1995. - July 14, 1995.

Present: BROWN, PERRETTA, & LAURENCE, JJ.

Further appellate review granted, 421 Mass. 1102 (1995).

*Search and Seizure*, Expectation of privacy, Container. *Privacy. Constitu-*
*tional Law*, Search and seizure, Privacy.

At the trial of an indictment for trafficking in cocaine, the judge correctly
    ruled that police officers were entitled to seize and search without a
    warrant a briefcase as to which the defendant had relinquished any rea-
    sonable expectation of privacy by throwing it out the window of his
    second-floor apartment into the back yard. [740-743] LAURENCE, J.,
    dissenting.

INDICTMENT found and returned in the Superior Court De-
partment on February 13, 1989.

A pretrial motion to suppress evidence was heard by *Pat-*
*rick F. Brady*, J., and the case was tried before him.

*Brownlow M. Speer*, Committee for Public Counsel Ser-
vices, for the defendant.

*Angela Park Read*, Assistant District Attorney, for the
Commonwealth.

BROWN, J. On the morning of December 6, 1988, Marlon
A. Straw was tipped off that the Boston police were immi-
nently arriving at his family's home in Dorchester with a
warrant for his arrest.[1] As the police entered the front door,
Straw threw a briefcase out the window of his second-floor
bedroom at the back of the house. It landed in the rear yard

---

[1]The facts are derived from the trial judge's findings and from uncon-
tested testimony. The arrest warrant was issued following Straw's default
on a charge of assault with intent to murder lodged in Dorchester District
Court. The record is silent as to the details of the alleged assault or the
ultimate disposition of that charge.

between the house and a wrought iron fence that separated the yard from the adjacent sidewalk.

The defenestration of the briefcase was observed by a Boston police officer prudently stationed at the rear of the house to intercept any attempted flight by Straw. After learning a few minutes later that Straw was in custody, the officer entered the rear yard, through a gate, to retrieve the briefcase. He noticed that the right side latch was unlocked, leaving that side of the briefcase slightly ajar. The officer pried open the right side of the case to look inside. He was able to see a plastic glassine bag containing a white, powdery substance that he believed (correctly, as it turned out) to be cocaine.[2]

The discovery of the contents of the briefcase caused the police to arrest Straw anew, on a drug charge. Advised of his Miranda rights (see *Miranda* v. *Arizona*, 384 U.S. 436, 479 [1966]), Straw told the police that when they arrived at his house he became "nervous" and threw the briefcase out the back window. Straw was subsequently indicted for the offense of trafficking in over 200 grams of cocaine. Straw's motion to suppress the contents of the briefcase, as the fruits of an illegal search in violation of his Fourth Amendment rights,[3] was denied. The judge held that the officers were entitled to seize and search the case as abandoned property, as to which Straw had relinquished any reasonable expectation

---

[2] Also inside the case were other bags of cocaine, totalling over 200 grams, an empty container of a cutting agent, plastic sandwich bags, $1,750 in cash, and a jewelry box with Straw's name in it.

[3] The Fourth Amendment to the Constitution of the United States protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The Supreme Court of the United States has construed the Fourth Amendment to make any government seizure and search of personal property, located in an area where the owner has a legitimate expectation of privacy, per se unreasonable unless it is accomplished pursuant to a warrant issued, as the Fourth Amendment also requires, by a judicial officer upon probable cause and particularly describing the items to be seized. *Katz* v. *United States*, 389 U.S. 347, 357 (1967). *United States* v. *Place*, 462 U.S. 696, 701 (1983). Straw has argued his case exclusively on the basis of his Fourth Amendment rights rather than on art. 14 of the Massachusetts Declaration of Rights (guaranteeing the "right to be secure from all unreasonable searches, and seizures").

of privacy by his act of throwing it out the window. The judge also found exigent circumstances justified the failure to obtain a warrant because of the risk that Straw's family might spirit away the incriminating briefcase during the time that would have elapsed while the police obtained a warrant. After a jury trial, Straw was convicted on the indictment and sentenced to at least fifteen years in prison.

Placing principal reliance on *United States* v. *Chadwick,* 433 U.S. 1 (1977), Straw maintains that the police officer performed an unconstitutional search[4] of the briefcase in the rear yard of his family's home and demands reversal of his trafficking conviction, which was almost entirely based upon the evidence of the contents of that case.

*Seizure of the briefcase.* The police were entitled, as Straw concedes (see note 4, *supra*) to seize the briefcase. They were lawfully on the premises pursuant to a valid arrest warrant and could legitimately stake out the rear of the house to prevent escape through the rear door. See *United States* v. *Morehead,* 959 F.2d 1489, 1496 (10th Cir. 1992). The circumstances of a briefcase being ejected from the house just as the police closed in for an arrest were such as to give a reasonable, prudent person applying practical common sense probable cause to believe that contraband or evidence of a crime might be being disposed of. See *Massachusetts* v. *Upton,* 466 U.S. 727, 734 (1984). We agree with the judge that the risk that members of Straw's family might make off with the potentially incriminating briefcase justified immediate police action to secure it. *United States* v. *Place,* 462 U.S. 696, 701-702 (1983).

*Abandonment.* A warrantless search or seizure of property that has been "abandoned" does not violate the Fourth Amendment. *Abel* v. *United States,* 362 U.S. 217, 241 (1960). Police can treat property as abandoned for Fourth

---

[4]Straw concedes that the circumstances justified the officer's seizure of the briefcase so as to secure it. See *United States* v. *Place,* 462 U.S. 696, 701 (1983). His appellate argument is confined to challenging the officer's opening and inspection of the interior of the briefcase without first obtaining a search warrant.

Amendment purposes when a defendant voluntarily relinquishes all control over it in such a way as to forgo any continued expectation of privacy in the item. See *Commonwealth* v. *Battle*, 365 Mass. 472, 475-476 (1974). The judge correctly concluded that Straw had "abandoned" the briefcase and thereby forfeited his Fourth Amendment rights therein.

The record reveals that the briefcase landed inside the fenced-in back yard of the single family home owned by Straw's family, where he was then staying. That area is part of the curtilage and in the usual case would be entitled to the same Fourth Amendment protection as the home itself.[5]

Under the cases, abandonment occurs when property is discarded in a public place or other area open to public view and to which members of the public have access, or otherwise in an area where the discarder can have no reasonable expectation of privacy.[6] See *Commonwealth* v. *Paszko*, 391 Mass. 164, 184-186 (1984); *Commonwealth* v. *Pina*, 406 Mass. 540, 546 (1990); *Commonwealth* v. *Lanigan*, 12 Mass. App. Ct. 913 (1981); *Commonwealth* v. *Small*, 28 Mass. App. Ct. 533, 536-537 (1990); *Commonwealth* v. *Nutile*, 31 Mass. App. Ct. 614, 619 (1991). Compare *United States* v. *Morgan*, 936 F.2d 1561, 1570-1571 (10th Cir. 1991) (bag abandoned when thrown by defendant to the side of a porch in the unfenced back yard of an acquaintance's house next to an open field and wooded area, so that any "ability to recover

---

[5] The Fourth Amendment protections that attach to the house extend to the "curtilage," the area immediately surrounding and associated with the home. *Oliver* v. *United States*, 466 U.S. 170, 180 (1984). A fenced-in back yard of a private home is within the curtilage, even if visible from the adjacent public sidewalk or street. *California* v. *Ciraolo*, 476 U.S. 207, 212-213 (1986). *United States* v. *Dunn*, 480 U.S. 294, 302 (1987).

[6] The determination whether there is abandonment focuses on the intent of the alleged abandoner, although the ultimate test of abandonment is an objective one under which "intent may be inferred from words spoken, acts done, and other objective facts." *Commonwealth* v. *Small*, 28 Mass. App. Ct. 533, 536 (1990). Review of a trial judge's finding of abandonment on a motion to suppress is under the clearly erroneous standard, *United States* v. *Thomas*, 864 F.2d 843, 846 (D.C. Cir. 1989), and the evidence is considered in the light most favorable to the government. *United States* v. *McAlpine*, 919 F.2d 1461, 1463 (10th Cir. 1990).

the [bag] depended entirely upon fate and the absence of inquisitive [and acquisitive] passers-by"); *United States* v. *Lewis*, 227 F. Supp. 433, 436 (S.D. N.Y. 1964) (package abandoned when defendant threw it out of apartment window into common courtyard at rear of multi-unit apartment building).

An inference of an intent on Straw's part to abandon the briefcase properly could be drawn from his throwing it into the back yard of his family's home.[7] The judge implicitly found an abandonment, and this he could permissibly do, as there is no rule of law that makes abandonment within the curtilage an oxymoron.

In *United States* v. *Chadwick*, 433 U.S. at 9, the Court said: "Our fundamental inquiry in considering Fourth Amendment issues is whether or not a search or seizure is reasonable under all the circumstances." Here, an inference of an intent to abandon the briefcase is reasonably supported by the circumstances of this case. It is not reasonable that a person has an expectation of privacy in a briefcase he pitches out the window as the police came in the front door. The "expectation" — more a hope — is that the briefcase won't be noticed. It would be obvious to any officer that the briefcase contained contraband. Moreover, in the circumstances of the arrest (assault with intent to murder), the content of the briefcase might even be dangerous. The police are entitled to make an on-the-spot inspection to check and secure

---

[7]Straw argues on appeal that his postarrest statement, about throwing the briefcase out the window because he "became nervous" when the police arrived, should have been suppressed as fruit of the illegal search of the briefcase. He did not move for suppression below, although he did object to introduction of the statement at trial. We do not have to pass on this contention (but see *Wong Sun* v. *United States*, 371 U.S. 471, 487-488 [1963]; *Commonwealth* v. *Conway*, 2 Mass. App. Ct. 547, 553-554 [1974]) because we have no need to address the Commonwealth's assertion that the statement revealed Straw's intent to abandon the case and its incriminating contents. Nor do we need decide whether the statement is wholly consistent with an intent merely to put the case beyond police reach while hoping eventually to reclaim it, to exactly the same extent as if he had more skillfully or thoughtfully secreted it in another protected area of the home such as an attic or a closet or even another room. Cf. *Smith* v. *Ohio*, 494 U.S. 541, 543-544 (1990).

potentially dangerous contents (i.e., ammunition, acid, explosives, or other dangerous instrumentality).

*Judgment affirmed.* .

LAURENCE, J. (dissenting). *United States* v. *Chadwick*, 433 U.S. 1 (1977), is not in my view as flexible or attenuated as it appears to the majority. Despite Straw's manifest guilt and exemplary police performance in every other respect, I conclude that the clear prohibition of that still-viable authority was violated by the warrantless search of Straw's briefcase. Under the Fourth Amendment to the United States Constitution as applied in *Chadwick*, law enforcement officers may not, without a valid search warrant, examine the interior of an arrestee's closed container that is seized at the time and scene of his arrest but is not in his immediate possession, control, or reach, once they have reduced that container to their exclusive control. In the absence of circumstances constituting one of the limited exceptions to the warrant requirement — none of which obtains here — the additional intrusion by warrantless search is unreasonable. Such a search is invalid even though the police have probable cause to believe that the container holds incriminating evidence and could, in all probability, eventually obtain a warrant to search and examine those contents. *Id.* at 13, 15-16. The precedent of *Chadwick* controls this case and mandates reversal. Its proper application to this otherwise righteous prosecution underscores the fundamental principle that law enforcement officers should ever bear in mind: *Always* get a warrant unless it is clearly dangerous or impracticable to do so.

*Seizure of the briefcase.* The propriety of the police seizure of the briefcase, to forestall its appropriation by Straw's family, appears to have caused the judge to overlook a critical fact: the exigency of potential loss or destruction of the evidence ceased as soon as the police picked up the briefcase and thereafter effectively controlled it. *United States* v.

*Chadwick*, 433 U.S. at 15.[1] Seizure is distinguishable from and does not legitimize the subsequent search. By placing personal effects inside a closed container, which he attempted to dispose of not on property accessible to the public but on protected premises within the enclosed curtilage of his family's house, Straw manifested an intention that its contents remain free of public examination. *Id.* at 11. Straw's principal privacy interest in the briefcase was not in the exterior container itself (which was exposed to public view), but rather in its locked contents. A search of the interior of the briefcase represented a far greater intrusion into his privacy interests protected by the Fourth Amendment than did the seizure and impoundment of the case, which did not diminish Straw's legitimate expectation of continued privacy for its contents. *Id.* at 13-14 n.8. See also *United States* v. *Ross*, 456 U.S. 798, 822-823 (1982) ("[T]he Fourth Amendment provides protection to the owner of every container that conceals its contents from plain view"); *Commonwealth* v. *Benoit*, 382 Mass. 210, 214 (1981).

Consequently, Straw's suppression motion should have been allowed, because no other of the limited exceptions to the constitutional warrant requirement applied on this record.[2] No matter how much probable cause, or even immedi-

---

[1]Contrary to the majority's final pronouncement, the record is devoid of evidence indicating any other possible exigency justifying an immediate warrantless search of property seized at the time of arrest, such as reason to believe that the briefcase contained explosives or some other imminently dangerous instrumentality, *United States* v. *Chadwick*, 433 U.S. at 15 n.9, or transient evidence whose value might be lost if the case were not opened immediately. Cf. *Commonwealth* v. *Hampe*, 419 Mass. 514, 520 (1995).

[2]The only other conceivable exceptions that might validate the warrantless search of the briefcase were neither argued by nor available to the Commonwealth on these facts. The search was not justifiable as incident to Straw's arrest, because the briefcase was far out of Straw's immediate control at the time, and there could have been no danger of his access to it so as to destroy or conceal evidence of the crime for which the police had come to arrest him, or to acquire a weapon to resist arrest or facilitate an escape. See *Chimel* v. *California*, 395 U.S. 752, 763 (1969); *Commonwealth* v. *Santiago*, 410 Mass. 737, 743 (1991). Contrast *Commonwealth* v. *Madera*, 402 Mass. 156, 158 (1988). Nor is it relevant that the police could ultimately have obtained a warrant to search the briefcase. The "inevitable discovery" exception to the exclusionary rule is not applicable to

ately apparent evidentiary significance, existed to justify seizure of the briefcase, it could not constitutionally be opened in the circumstances without first obtaining a search warrant. *United States* v. *Chadwick*, 433 U.S. at 13-14 and n.8. *United States* v. *Place*, 462 U.S. 696, 701 n.3 (1983).

*Abandonment*. Contrary to the judge's and the majority's primary premise, Straw did not "abandon" the briefcase so as to forfeit his Fourth Amendment rights therein. The record plainly reveals that the briefcase landed inside the fenced-in back yard of the single family home owned by

---

cure such warrantless searches. *United States* v. *Chadwick*, 433 U.S. at 15, 19-20. *Commonwealth* v. *Benoit*, 382 Mass. at 217-219. In any event, the Commonwealth had the burden of proving the inevitability of the discovery of the briefcase's contents, see *United States* v. *Infante-Ruiz*, 13 F.3d 498, 503-504 (lst Cir. 1994); *Commonwealth* v. *O'Connor*, 406 Mass. 112, 117 (1989), and did nothing to discharge that burden on this record. Without knowledge of the facts of the underlying assault, we cannot be confident that obtaining a search warrant for the briefcase or that discovery of its contents by other lawful means, unrelated to the illicit search itself, was at all "certain as a practical matter." *Ibid.* There is no reason to believe that the briefcase would have been made the subject of a custodial "inventory search," since, given its location on the family's property, the rationale for such a search — the safeguarding of the arrestee's property and preclusion of false claims of theft or damage against the police — did not apply in the circumstances. See *United States* v. *Perea*, 986 F.2d 633, 643-644 (2d Cir. 1993). Finally, the Commonwealth's suggestion that the briefcase was properly searched under the "plain view doctrine" has no merit. Accepting it would effectively eviscerate the very principle of *United States* v. *Chadwick, supra*, which is sufficient to reject it. Moreover, there is nothing in the testimony of the officer involved, or elsewhere in the record, that establishes an element essential for application of the plain view doctrine, namely the police's immediate recognition of the item's incriminating evidentiary significance. *Coolidge* v. *New Hampshire*, 403 U.S. 443, 466 (1971). *Arizona* v. *Hicks*, 480 U.S. 321, 326-327 (1987). *Commonwealth* v. *Santana*, 420 Mass. 205, 211 (1995). The officer's prying and peering into the briefcase here indicated at most suspicious curiosity, since the briefcase in and of itself was not instantly recognizable as contraband or a criminal instrumentality or fruits of a crime; and the record is barren of evidence indicating that the officer could "recognize it to be plausibly related as proof to criminal activity of which [he was] already aware." *Commonwealth* v. *Rodriguez*, 378 Mass. 296, 303 (1979). Since the record provides no information regarding the underlying assault with which Straw had been charged, it is not possible to infer that the officer could reasonably have suspected that the briefcase might contain evidence relevant to the assault, which may have been committed with a weapon much larger than the briefcase, or with no weapon at all.

Straw's family, where he was then staying. That area was part of the curtilage and is entitled, as the majority recognizes (see note 5 of the majority opinion), to the same Fourth Amendment protection as the home itself. Police can treat property as abandoned for Fourth Amendment purposes only when a defendant voluntarily relinquishes *all* control over it in such a way as to forgo *any* continued expectation of privacy in the item. See *Commonwealth* v. *Battle*, 365 Mass. 472, 475-476 (1974). Even under the restrictive standards of review applicable to a finding of abandonment (see note 6 of the majority opinion), the conclusion that abandonment occurred merely by virtue of Straw's throwing the briefcase out the window into his family's back yard is insupportable in the instant circumstances, accepting the correctness of all the facts found by the judge. See *United States* v. *Thomas*, 864 F.2d 843, 846 (D.C. Cir. 1989).

No inference of an intent on Straw's part to abandon the briefcase can be drawn from his throwing it into the fenced-in back yard of his family's home. As noted, he enjoyed the same reasonable expectation of privacy in that location as he did in the home itself, *Commonwealth* v. *One 1985 Ford Thunderbird Automobile*, 416 Mass. 603, 608 (1993), and it is in the home that a person's expectation of privacy is at its highest. See *Commonwealth* v. *Blinn*, 399 Mass. 126, 128, appeal dismissed, 482 U.S. 921 (1987) (under the Fourth Amendment "sanctity [is] accorded an individual's home"); *Commonwealth* v. *Panetti*, 406 Mass. 230, 234 n.5 (1989) (the home is "[a]t the very core" of Fourth Amendment rights). See also *California* v. *Ciraolo*, 476 U.S. 207, 212-213 (1986) (backyard of private dwelling is viewed as an extension of the home). Straw's action is entirely, and more persuasively, consistent with an intent to deprive the police of access to the briefcase while not precluding his own later reclamation. It is analytically analogous to his having tried (more adeptly) to conceal the briefcase from the approaching police by placing it in another area of the home that would have been out of the sight and beyond the purview of invading authorities not in possession of a search warrant. Cf. *Smith* v. *Ohio*, 494 U.S. 541, 543-544 (1990).

Nor did any abandonment of the briefcase occur in fact, because at no time pertinent to the present issue did any member of the public have legitimate access to the briefcase or any view of its contents as it sat in the fenced-in back yard of Straw's family home. See *Commonwealth v. Small*, 28 Mass. App. Ct. 533, 537 (1990). "The enclosed back yard in which the thrown [briefcase] landed was part of the curtilage of the defendant's home and was subject to the same protection as the home itself. . . . [E]ven after the [briefcase] was thrown out it remained upon protected premises." *Hobson v. United States*, 226 F.2d 890, 894 (8th Cir. 1955). See also *Smith v. Ohio*, 494 U.S. at 543-544 (when approached by police, defendant threw suspicious bag he was carrying onto hood of his car; police search of bag, which contained drug paraphernalia, held unconstitutional because "a citizen who attempts to protect his private property from inspection, after throwing it on a car to respond to a police officer's inquiry, clearly has not abandoned that property"). Indeed, the judge's alternative "exigency" justification for denying suppression implicitly recognized that, objectively, the briefcase, far from being abandoned, remained readily accessible to members of Straw's family, who presumably would have taken it in. Contrast *United States v. Morgan*, 936 F.2d 1561, 1571 (10th Cir. 1991) (not only was the bag containing incriminating evidence thrown by the defendant into an unfenced back yard adjacent to an open field and accessible to any passerby, but the property belonged to a mere acquaintance, and there was no one else present on the premises who could have helped the defendant protect or recover the bag).

There was essentially no evidence against Straw to support his trafficking conviction without the contents of the briefcase. His conviction should, therefore, have been set aside, and judgment should have entered for him on that charge. See *Commonwealth v. O'Connor*, 21 Mass. App. Ct. 404, 407 (1986).