COMMONWEALTH *vs.* MARLON A. STRAW.

Suffolk. April 1, 1996. - May 24, 1996.

Present: LIACOS, C.J., WILKINS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Search and Seizure,* Exigent circumstances, Expectation of privacy, Container. *Privacy. Constitutional Law,* Search and seizure, Privacy, Admissions and confessions.

In circumstances in which, as police attempted to serve an arrest warrant on him, the defendant threw from a second story window a closed and locked briefcase that landed unopened within the fenced-in curtilage of the property, police officers had no right to open the briefcase and seize the contents without a warrant inasmuch as there were no exigent circumstances and abandonment had not been shown. [758-762] LYNCH, J., dissenting.

Where a criminal defendant's motion to suppress evidence should have been allowed and there remained no other admissible evidence on which to base a conviction, judgment was to enter for the defendant. [762-763]

INDICTMENT found and returned in the Superior Court Department on February 13, 1989.

A pretrial motion to suppress evidence was heard by *Patrick F. Brady,* J., and the case was tried before him.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Brownlow M. Speer* for the defendant.

*Jane L. McDonough,* Assistant District Attorney, for the Commonwealth.

GREANEY, J. The defendant, Marlon A. Straw, was convicted by a jury of trafficking in cocaine in a net weight of 200 grams or more. G. L. c. 94C, § 32E (*b*) (4) (1994 ed.). Prior to trial, the defendant moved to suppress a briefcase and its contents (cocaine and other items) contending that the "briefcase and its contents were seized without benefit of a warrant." After a hearing, a judge of the Superior Court denied the motion on the basis that the defendant had abandoned the briefcase, and, alternatively, that exigent cir-

cumstances required that it be seized and searched immediately. The defendant appealed from his conviction to the Appeals Court, arguing that the denial of the motion to suppress the briefcase and its contents was error. The defendant also argued for the first time that he was entitled to the suppression of admissions made after his arrest because they were the product of an illegal search of the briefcase. A panel of the Appeals Court, with one justice dissenting, concluded that the motion to suppress had been properly denied. 38 Mass. App. Ct. 738 (1995). We granted the defendant's application for further appellate review. We conclude that the defendant's motion to suppress should have been allowed, that the admissions made by him after his arrest also must be suppressed, and that, since the Commonwealth has no other proof to sustain the charge, the defendant is entitled to judgment in his favor.

. The facts, as found by the judge after an evidentiary hearing, are as follows. On the morning of December 6, 1988, a State trooper and five other police officers went to 68 Calendar Street in the Dorchester section of Boston to execute an arrest warrant on the defendant. The warrant had been issued following the defendant's default on an assault with intent to murder charge in the Dorchester District Court. The police had information that the defendant was at the 68 Calendar Street address.[1]

In response to a knock by the officers, the defendant's mother opened the front door of the house, and she was advised that the police were there to execute an arrest warrant for the defendant. The defendant's mother indicated that her son was upstairs. A police officer encountered the defendant as he was coming down the stairs from the second floor and placed him under arrest on the default warrant.

. Before the arrest occurred, a police officer, who had positioned himself behind the house to intercept the defendant if he tried to flee, saw a window opened on the second floor and a briefcase thrown to the yard below. The briefcase, which was thrown by the defendant, landed about six to ten feet from the house in the back yard between the house and a wrought iron fence that separated the yard from the adjacent sidewalk.

---

[1] At the hearing on the motion to suppress, there was undisputed testimony that 68 Calendar Street was a three-story single-family home occupied by the defendant's family.

The officer who observed the foregoing entered the back yard to retrieve the briefcase. The officer noticed that the right side latch of the briefcase was unlocked, leaving that side slightly ajar. He proceeded to pry open the right side of the briefcase and to look inside, where he saw a plastic glassine bag containing a white powdery substance which he believed (correctly, as it turned out) to be cocaine. The officer proceeded to explore fully the contents of the briefcase, which included other bags of white powder (cocaine totalling over 200 grams), an empty container of a cutting agent, plastic sandwich bags, $1,750 in cash, a jewelry box with the defendant's name on it, and a receipt for a gold watch.

The defendant was again placed under arrest, this time for a violation of the controlled substances laws. At the police station, the defendant was advised of his Miranda rights and questioned. He admitted to purchasing the cocaine, and he told the police that, when they arrived at the house, he became "nervous" and threw the briefcase out of the second-floor window.

1. The parties have treated the defendant's motion to suppress as based solely on the Fourth Amendment to the United States Constitution. The judge concluded that the police officers were entitled to seize and search the briefcase since it constituted abandoned property as to which the defendant had relinquished any reasonable expectation of privacy when he threw it out the window. The judge also concluded that exigent circumstances permitted the search because of the risk that a member of the defendant's family might spirit away the briefcase before the police could apply to a magistrate for a warrant. We proceed to discuss these conclusions.

The Fourth Amendment proscribes unreasonable searches and seizures. The United States Supreme Court has construed the Fourth Amendment to make any government seizure and search of personal property, located in an area where the owner has a legitimate expectation of privacy, per se unreasonable unless accomplished pursuant to a properly issued warrant. See *United States* v. *Place*, 462 U.S. 696, 701 (1983); *United States* v. *Chadwick*, 433 U.S. 1, 9, 13 (1977); *Katz* v. *United States*, 389 U.S. 347, 357 (1967).

The second point relied on by the judge as an applicable exception to the warrant requirement (exigent circumstances based on a concern that the defendant's family might recover

and hide or destroy the contents of the briefcase) need not detain us long. The police had a right to seize and protect the briefcase without a warrant because it was observed by an officer who was in a place where the officer had a right to be in connection with the defendant's lawful arrest on the default warrant. See *United States* v. *Corral,* 970 F.2d 719, 725 (10th Cir. 1992). However, once the briefcase had been seized and taken under the control of the police, any exigency related to potential loss or destruction of evidence therein ceased to exist. See *United States* v. *Chadwick, supra* at 15. Further, there is nothing to indicate that the briefcase might have contained any dangerous instrument or substance, cf. *Commonwealth* v. *Madera,* 402 Mass. 156, 160 (1988), or that any possible evidence inside might be subject to loss if the briefcase was not opened immediately. The ground of exigency, therefore, is not available to justify opening and searching the briefcase.

The first point relied on by the judge requires us to examine the question of abandonment, that is, phrased in Fourth Amendment terms, whether the defendant discarded the briefcase in a place, and in the circumstances, where he could not reasonably have any continued expectation of privacy in its contents. See *California* v. *Greenwood,* 486 U.S. 35, 39 (1988). See also *Commonwealth* v. *Krisco Corp.,* 421 Mass. 37, 41 (1995), and cases cited; *St. Paul* v. *Vaughn,* 306 Minn. 337, 346-347 (1975); 1 W.R. LaFave, Search and Seizure § 2.6 (b), at 573-576 (3d ed. 1996). Resolution of the question requires consideration whether the defendant had a subjective expectation of privacy in the place searched, and in the contents of the briefcase, which could be considered objectively reasonable or legitimate. *Commonwealth* v. *Krisco Corp., supra* at 41-42. Put differently, the briefcase and its contents would be abandoned for Fourth Amendment purposes only if the defendant had voluntarily surrendered all control over the briefcase in a way which demonstrated that he had relinquished any continued expectation of privacy. See *Commonwealth* v. *Battle,* 365 Mass. 472, 475-476 (1974).

We conclude that the defendant intended to protect his property from any public scrutiny because he placed the property in a closed and locked briefcase and disposed of the briefcase by throwing it into the fenced-in curtilage of his family's home, an area enjoying full Fourth Amendment protection from search by the authorities. The reasons sup-

porting this conclusion, and establishing why abandonment has not been shown on the facts found by the judge, are fully set forth in the dissenting opinion of the Appeals Court, which we now repeat:

"No inference of an intent on [the defendant's] part to abandon the briefcase can be drawn from his throwing it into the fenced-in back yard of his family's home. . . . [H]e enjoyed the same reasonable expectation of privacy in that location as he did in the home itself, *Commonwealth* v. *One 1985 Ford Thunderbird [Auto.]*, 416 Mass. 603, 608 (1993), and it is in the home that a person's expectation of privacy is at its highest. See *Commonwealth* v. *Blinn*, 399 Mass. 126, 128, appeal dismissed, 482 U.S. 921 (1987) (under the Fourth Amendment 'sanctity [is] accorded an individual's home'); *Commonwealth* v. *Panetti*, 406 Mass. 230, 234 n.5 (1989) (the home is '[a]t the very core' of Fourth Amendment rights). See also *California* v. *Ciraolo*, 476 U.S. 207, 212-213 (1986) (backyard of private dwelling is viewed as an extension of the home). [The defendant's] action is entirely, and more persuasively, consistent with an intent to deprive the police of access to the briefcase while not precluding his own later reclamation. It is analytically analogous to his having tried (more adeptly) to conceal the briefcase from the approaching police by placing it in another area of the home that would have been out of the sight and beyond the purview of invading authorities not in possession of a search warrant. Cf. *Smith* v. *Ohio*, 494 U.S. 541, 543-544 (1990).[2]

"Nor did any abandonment of the briefcase occur in fact, because at no time pertinent to the present issue did any member of the public have legitimate access to the briefcase or any view of its contents as it sat in the fenced-in back yard of [the defendant's] family home. See *Commonwealth* v.

---

[2]The United States Supreme Court indicated in *Smith* v. *Ohio*, 494 U.S. 541 (1990), that no intent to abandon can reasonably be inferred from the act of throwing the briefcase without reference to the place into which it was thrown. In the *Smith* case, Smith, when asked to stop by a police officer, threw a brown paper grocery bag onto the hood of his automobile. The officer pushed Smith's hand away from the bag, opened it, and discovered drug paraphernalia. The Supreme Court, affirming the reasoning of the Ohio Supreme Court, rejected the contention that Smith had abandoned the bag by throwing it onto his automobile, reasoning that Smith had, instead, been attempting to protect the bag from inspection. *Id.* at 543-544.

*Small,* 28 Mass. App. Ct. 533, 537 (1990). "The enclosed back yard in which the thrown [briefcase] landed was part of the curtilage of the defendant's home and was subject to the same protection as the home itself. . . . [E]ven after the [briefcase] was thrown out it remained upon protected premises.' *Hobson* v. *United States,* 226 F.2d 890, 894 (8th Cir. 1955). See also *Smith* v. *Ohio,* 494 U.S. at 543-544 (when approached by police, defendant threw suspicious bag he was carrying onto hood of his car; police search of bag, which contained drug paraphernalia, held unconstitutional because 'a citizen who attempts to protect his private property from inspection, after throwing it on a car to respond to a police officer's inquiry, clearly has not abandoned that property'). Indeed, the judge's alternative 'exigency' justification for denying suppression implicitly recognized that, objectively, the briefcase, far from being abandoned, remained readily accessible to members of [the defendant's] family, who presumably would have taken it in. Contrast *United States* v. *Morgan,* 936 F.2d 1561, 1571 (10th Cir. 1991)[, cert. denied, 502 U.S. 1102] (1992) (not only was the bag containing incriminating evidence thrown by the defendant into an unfenced back yard adjacent to an open field and accessible to any passerby, but the property belonged to a mere acquaintance, and there was no one else present on the premises who could have helped the defendant protect or recover the bag)." 38 Mass. App. Ct. at 746-747 (Laurence, J., dissenting).

The Commonwealth resists these conclusions by relying on decisions which it argues have found an abandonment in analogous circumstances. The decisions, however, are not on point, because in each one the defendant threw, dropped, or left the container, or some other item, in an area in which, by law, he or she had no reasonable expectation of privacy. See *United States* v. *Scott,* 975 F.2d 927, 929 (1st Cir. 1992), cert. denied, 507 U.S. 1042 (1993) (incriminating shredded documents put in garbage bag which was deposited in a public place and in control of third parties); *United States* v. *Wider,* 951 F.2d 1283, 1285-1286 (D.C. Cir. 1991) (defendant left brown paper bag in public place and walked away); *United States* v. *Morgan,* 936 F.2d 1561, 1565-1571 (10th Cir. 1991) (defendant threw bag onto porch within curtilage of someone else's home), cert. denied, 502 U.S. 1102 (1992); *United States* v. *Pirolli,* 673 F.2d 1200, 1203-1204 (11th Cir.) (three vinyl,

plastic, or leather bags left by defendant outside of curtilage), cert. denied, 459 U.S. 871 (1982); *United States* v. *Lewis*, 227 F. Supp. 433, 436 (S.D.N.Y. 1964) (package containing contraband thrown into courtyard of a multi-unit building where tenants and some members of public had right of access); *Commonwealth* v. *Harper*, 485 Pa. 572, 585 (1979) (handgun thrown from defendant's residence onto roof of a shed on adjoining property). In none of these cases did a defendant leave or place a container on property to which only he and members of his family normally would have a right of access. That difference effectively distinguishes this case from the cases on which the Commonwealth relies. Here, the Commonwealth runs squarely into the high degree of protection afforded by the Fourth Amendment to the curtilage of one's own home, and the accompanying principle that abandonment has not occurred unless it can be concluded that an owner relinquished property under circumstances indicating that he retained no justified expectation of privacy in the property.[3]

2. The defendant did not expressly move to suppress his admissions to the police. The judge's findings, however, leave no room for doubt that the admissions were the direct product of the unlawful search of the briefcase, and, as such, must be suppressed under the "fruit of the poisonous tree" doctrine set forth in *Wong Sun* v. *United States*, 371 U.S. 471, 488 (1963). See *Commonwealth* v. *Ferguson*, 410 Mass. 611, 616 (1991). With the contents of the briefcase and the defendant's

---

[3]For the reasons stated in *Commonwealth* v. *Straw*, 38 Mass. App. Ct. 738, 744 n.2 (1995) (Laurence, J., dissenting), no other exception to the warrant requirement is present to justify the search of the briefcase beside the abandonment exception. We reject the Commonwealth's argument that the search was justified under the so-called "plain view" exception to the warrant requirement. "In cases involving closed containers . . . the plain view doctrine may support the warrantless *seizure* of a container believed to contain contraband but any subsequent *search* of the concealed contents of the container must be accompanied by a warrant or justified by one of the exceptions to the warrant requirement." *United States* v. *Corral*, 970 F.2d 719, 725 (10th Cir. 1992). In the *Corral* case, the court noted that the warrant requirement would be excused when the contents of a container were plainly visible, or when the police "possess knowledge approaching certainty," of a container's contents. *Id.* The judge found that the contents of the briefcase were not visible until an officer pried it open, and there was no evidence that the police had "knowledge approaching certainty" about those contents before the briefcase was opened and its contents observed.

admissions suppressed, there is no evidence to support his conviction. In such circumstances, "[t]he defendant's motion for a required finding of not guilty must now be allowed." *Commonwealth* v. *Thibeau*, 384 Mass. 762, 765 (1981).

> *Judgment reversed.*
>
> *Verdict set aside.*
>
> *Judgment for the defendant.*

LYNCH, J. (dissenting). I agree with the reasoning of the Appeals Court. "Here, an inference of an intent to abandon the briefcase is reasonably supported by the circumstances of this case. It is not reasonable that a person has an expectation of privacy in a briefcase he pitches out the window as the police came in the front door." *Commonwealth* v. *Straw*, 38 Mass. App. Ct. 738, 742 (1995).

I respectfully dissent.