## Commonwealth *vs.* Christopher E. Augello
## (and a companion case[1]).

No. 06-P-1850.

Berkshire. August 15, 2007. - January 25, 2008.

Present: Mills, Brown, & Trainor, JJ.

Further appellate review granted, 451 Mass. 1101 (2008).

*Constitutional Law,* Search and seizure, Privacy. *Search and Seizure,* Expectation of privacy, Container. *Privacy.*

In allowing a pretrial motion to suppress evidence seized at a residence by police officers without a search warrant, the trial court judge properly concluded that the criminal defendants had a reasonable expectation of privacy in a suitcase seized at their apartment, as it was a closed container placed inside the defendants' apartment and not in plain view [107-108]; further, the judge did not err in concluding that the defendants had not abandoned the suitcase, where the defendants' negative answers to the police officers' questions regarding their ownership of the suitcase did not, as a matter of law, constitute abandonment of that property and of any reasonable expectation of privacy with regard to its contents, and where the objective facts and actions of the defendants in locating the suitcase within their apartment belied any intent to abandon the property [108-113].

Complaints received and sworn to in the Northern Berkshire Division of the District Court Department on January 27, 2006.

A pretrial motion to suppress evidence was heard by *Paul M. Vrabel,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Robert J. Cordy,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

*Joseph A. Pieropan,* Assistant District Attorney, for the Commonwealth.

*Jeremia A. Pollard* for Christopher E. Augello.

*David A. Pixley,* for Roger J. Arigoni, III, was present but did not argue.

[1] Commonwealth *vs.* Roger J. Arigoni, Third.

BROWN, J. The defendants were charged in a District Court with receiving stolen property valued at $250 or more. See G. L. c. 266, § 60. Before trial, they filed a joint motion to suppress evidence seized at their home and searched without a warrant, including the contents of a black suitcase found in the defendants' shared apartment. After a hearing, that motion was allowed. The Commonwealth now appeals from the portion of that order relating to the contents of the black suitcase. We affirm.

*Facts.* On the morning of January 26, 2006, a custodian at the East Hoosac Athletic Club (club) discovered that approximately $775 worth of bottled liquor and two trash cans had been stolen from the club's bar the night before. Police were summoned and an investigation ensued. After a search of the area, the trash cans were found along the bank of the Hoosac River, behind the home in which the family of one of the defendants, Augello, lived. There was also evidence that Augello had been seen near the club the night before and that, somewhat later that evening, he and the other defendant, Arigoni, had been seen carrying a black suitcase.

Based on the leads they had uncovered, police went to the defendants' shared home. Arigoni invited the officers inside. They saw a few bottles of liquor in the apartment that matched the description of bottles taken from the club.[2] They also noticed a large, overstuffed black suitcase in the defendants' kitchen partially covered by a soft nylon bag. The police asked Arigoni about the suitcase, and he denied that it was his. He suggested that it might belong to Augello, who was not home at that time. When Augello returned to the apartment, he likewise answered "no" when asked if the suitcase was his.

Rather than obtain a warrant,[3] the police decided to open the suitcase immediately on the theory that it could be considered abandoned property. Inside, the officers found a large number

---

[2]These bottles were subject to the motion judge's suppression order as well. However, the Commonwealth, in its brief, challenges only the suppression of the suitcase and its contents. We express no opinion, therefore, on the lawfulness of police conduct with respect to any of the other evidence seized from the defendants' apartment.

[3]At this juncture, we pause to point out two salient facts: the police officers' action occurred in the defendants' home, and the search was warrantless.

of bottles of liquor. These were subsequently identified by an employee of the club as being part of the group of bottles that had been stolen from the club. Other facts are included in our analysis as required.

At a subsequent hearing on the defendants' motion to suppress, the Commonwealth argued that the defendants, by disclaiming ownership of the suitcase, abandoned it, along with any privacy interest inhering in the same. The motion judge rejected this theory, concluding that the defendants' action in placing the suitcase in their home evidenced a strong expectation of privacy that was not overcome by the defendants' statements disavowing ownership — particularly in view of the fact that to have asserted an ownership interest might have been inculpatory in the circumstances. The motion judge observed that, even though they denied owning the suitcase, they "had not abandoned the apartment and thus had a right of privacy as to all contents therein."

On appeal, the government again relies solely on a theory of abandonment.[4] In essence, the Commonwealth presses the argument that a verbal disclaimer of ownership negates any constitutional privacy interest as matter of law.

*Analysis.* A seizure or search implicates constitutional protections when, inter alia, it intrudes upon a place as to which a defendant maintains a reasonable expectation of privacy. See *Commonwealth* v. *Colon,* 449 Mass. 207, 213 (2007). "The measure of the defendant's expectation of privacy is (1) whether the defendant has manifested a subjective expectation of privacy in the object of the search, and (2) whether society is willing to recognize that expectation as reasonable." *Commonwealth* v. *Montanez,* 410 Mass. 290, 301 (1991).[5]

---

[4] As an apparent afterthought, the Commonwealth has included a cursory argument that the seizure of the suitcase at issue here was justified on the basis of consent. This issue is not developed with the clarity required by Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975), and so need not be addressed here. Moreover, this theory apparently was not presented to the motion judge (in any event, it is not addressed in the motion judge's findings) and so may not be raised for the first time on appeal. We note in passing that were we called upon to decide the question, it would likely not be resolved in the Commonwealth's favor. Allowing the police to enter the apartment to speak with them is not the same as giving permission to search the apartment and items in it.

[5] The motion to suppress was brought under both art. 14 of the Massachusetts

a. *Expectation of privacy prior to seizure and search.* "In evaluating the reasonableness of an individual's expectation of privacy, we look to a number of factors, including the character of the location involved . . . . [W]e consider . . . whether the defendant controlled access to the areas . . . and whether the area was freely accessible to others . . . ." *Commonwealth* v. *Montanez*, 410 Mass. at 301-302. See *Commonwealth* v. *Colon*, 449 Mass. at 213-214. Here, the defendants' expectation of privacy in the suitcase — manifested by its placement — was reasonable, as the suitcase was placed inside their apartment and it was, moreover, a closed container, the contents of which were not visible. The defendants, as occupants, controlled access to the apartment, and obviously, it was not an area freely accessible to others. Although the police officers were legitimately in the apartment, invited inside by defendant Arigoni, they did not have a warrant. "[A] home is a place in which a subjective expectation of privacy will always be legitimate." *Payton* v. *New York*, 445 U.S. 573, 589-590 (1980). See *Silverman* v. *United States*, 365 U.S. 505, 511 (1961). Moreover, as previously mentioned, the suitcase was closed, and its contents were not exposed to view. Objects and activities in the home, unlike objects elsewhere, "need only be removed from plain view in order to be protected." *Commonwealth* v. *Krisco Corp.*, 421 Mass. 37, 44 (1995).

b. *Abandonment issue.* Here, the Commonwealth asserts that even though the suitcase was in the defendants' apartment, by their answering "no" to the police officers' questions regarding their ownership of the suitcase, both defendants abandoned the property and any reasonable expectation of privacy in regard to its contents — divesting themselves of the otherwise applicable constitutional protections. "Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts." *Commonwealth* v. *Paszko*,

---

Declaration of Rights and the Fourth Amendment to the United States Constitution. Analysis of the expectation of privacy question under art. 14 may, but does not necessarily, lead to the same result as analysis under the Fourth Amendment. See *Commonwealth* v. *Montanez*, 410 Mass. at 301, citing *Commonwealth* v. *Panetti*, 406 Mass. 230, 234 (1989). On the facts of the present case, we reach the same result under both art. 14 and the Fourth Amendment.

391 Mass. 164, 184 (1984), quoting from *United States* v. *Colbert*, 474 F.2d 174, 176 (5th Cir. 1973). Whether there was an intent to abandon is, therefore, primarily a question of fact. Relevant to deciding the question is whether the defendants had a subjective expectation of privacy in the location where the item was found and in the contents of the item which could be considered objectively reasonable or legitimate. *Commonwealth* v. *Straw*, 422 Mass. 756, 759 (1996). An item would be considered abandoned for constitutional purposes "only if the defendant had voluntarily surrendered all control over [the item] in a way which demonstrated that he had relinquished any continued expectation of privacy." *Ibid.*

On this point the motion judge made the following findings:

> "[T]he court rules that the defendants had not abandoned the black suitcase. The suitcase was inside the defendants' apartment, to which only the defendants, as the lawful occupants, had a right of access. The apartment was secured, as the officers had to ask for consent to enter. . . . The court rules that the contents of the black suitcase may not be introduced into evidence at the time of trial."

In reviewing a ruling on a motion to suppress, "we accept the judge's subsidiary findings of fact absent clear error 'but conduct an independent review of [the] ultimate findings and conclusions of law.' " *Commonwealth* v. *Colon*, 449 Mass. at 214, quoting from *Commonwealth* v. *Scott*, 440 Mass. 642, 646 (2004).

In essence, the Commonwealth takes the position in this case that an oral disclaimer of ownership is dispositive on the issue of abandonment as matter of law. We disagree, and the case law states otherwise.[6] See *Commonwealth* v. *Paszko, supra*; *Commonwealth* v. *Straw, supra.* Here, as already noted, the place

---

[6]As a general matter, we are not prepared to say that, as matter of law, disclaiming ownership in property always negates any possibility of thereafter asserting a privacy interest with respect to that property. The question whether a reasonable expectation of privacy exists in any particular case is necessarily fact-dependent and must take into consideration all of the attendant circumstances. If any one factor does predominate, it is not what a defendant says about his relation to seized property, but rather the place in which the property is found and the defendant's relation to that place. See *Common-*

where the suitcase was found was the defendants' apartment, and the items were in a closed container and not in plain view. Thus, the location was subject to the highest constitutional protection and the expectation of privacy without question was legitimate. In short, the objective facts and the actions of the defendants in locating the objects belie any intent to abandon the objects. These factors must be taken into account along with the words of the defendants in determining intent. See *Commonwealth* v. *Paszko, supra.*

We note, in addition, that we also arguably rejected the Commonwealth's position that words alone determine the issue in *Commonwealth* v. *Small*, 28 Mass. App. Ct. 533, 536 (1990). In *Small*, police officers, acting on a tip, searched the defendant's checked airline luggage without a warrant and discovered a cache of illegal drugs. When the defendant subsequently claimed his suitcases, officers confronted him. He dropped the bags and denied they were his. In justifying the search, the Commonwealth claimed in effect that the defendant had abandoned the bags. The court rejected the claim of abandonment based upon the defendant's dropping of the bags and disclaimer of ownership, because the search had preceded the alleged abandonment; the court also indicated that a "verbal disclaimer" standing alone would not support an inference of abandonment absent "other acts by the defendant to support an inference of disclaimer or abandonment." *Id.* at 536.

This view that a mere verbal disclaimer is insufficient to constitute abandonment for Fourth Amendment purposes has wide support in the law of other jurisdictions. In *Washington* v. *Evans*, 159 Wash. 2d 402, 405-406, 409-413 (2007), for example, the court determined that a defendant had not abandoned a briefcase found in his truck, and thereby surrendered an expectation of privacy therein, merely by denying that the briefcase was his. As the court concluded: "The fact that [the defendant] denied ownership of the briefcase is not, by itself, sufficient to exhibit the combination of act and intent of abandonment

*wealth* v. *Montanez*, 410 Mass. at 301; *Commonwealth* v. *Straw*, 422 Mass. at 758-762. As the motion judge found here, there may be good reason to discredit a disclaimer of ownership where to assert the contrary would be strongly inculpatory.

. . . ." *Id.* at 413. Similarly, in *State* v. *Huether*, 453 N.W.2d 778, 781 (N.D. 1990), the court ruled that a defendant retained a reasonable expectation of privacy in a bag found stuffed under the seat of his pickup truck, despite the fact that he told police it did not belong to him. Finally, in *People* v. *Ramirez-Portoreal*, 88 N.Y.2d 99, 110 (1996), the New York Court of Appeals stated, "[S]tanding alone, the surrender of control or disclaimer of ownership does not always establish [abandonment] . . . ."

In all of these cases, the courts emphasized that, for the purposes of determining whether an item has been abandoned, far more important than anything a defendant says about his relationship to the object are the circumstances in which the item is found. Where property is discovered in a place as to which a defendant has a strong basis for asserting a reasonable expectation of privacy, that privacy interest generally is not negated by a mere verbal disclaimer. In both *Evans* and *Huether*, for example, the items in question were found in motor vehicles owned by the defendants. As the court observed in the latter case, "[t]here is little doubt that Huether had an expectation of privacy in his vehicle and in every container therein that concealed its contents from plain view." *State* v. *Huether*, 453 N.W.2d at 781. Here, because the suitcase was found in the defendants' shared home, they were entitled to assert, if anything, an even stronger privacy interest than their counterparts in *Evans* and *Huether*. Cf. *Commonwealth* v. *Panetti*, 406 Mass. 230, 234 (1989), quoting from *Silverman* v. *United States*, 365 U.S. 505, 511 (1961) (home lies at "very core" of Fourth Amendment rights).[7]

Looking to the place in which allegedly abandoned property

---

[7]The Commonwealth puts forth in support of its position language from a case arising in the United States Court of Appeals for the First Circuit, *United States* v. *Zapata*, 18 F.3d 971, 978 (1st Cir. 1994). In that case, the defendant had given permission to police officers to search the trunk of his motor vehicle. The court decided that the defendant had also consented to a search of duffel bags found in the trunk because the general consent to search of the automobile constituted consent to a search of the bags inside the automobile. The court added that the defendant's disclaimer of ownership of the bags "strengthen[ed] the case for a finding of consent," because "one who disclaims ownership is likely to be found to have abandoned ownership." *Ibid.* Not only were the circumstances in *Zapata* different from the circumstances here, but the issue in *Zapata* — the extent of the consent given — has no bearing on the present case, in which consent to the search was neither requested nor offered.

is found as the touchstone for determining whether a defendant, in fact, has surrendered his privacy interest with respect to that property was the basis for the decision in *Commonwealth* v. *Straw*, 422 Mass. at 758-760. In *Straw*, the court held that the defendant had not abandoned his briefcase, despite the fact that he threw it out of the window of his home when police approached. The court premised its finding on the fact that the briefcase landed in "the fenced-in curtilage of his family's home, an area enjoying full Fourth Amendment protection from search by the authorities. . . . [H]e enjoyed the same reasonable expectation of privacy in that location as he did in the home itself . . . and it is in the home that a person's expectation of privacy is at its highest." *Id.* at 759-760.

Looking to the place where allegedly abandoned items are found is also consistent with the outcome in the recent Massachusetts case of *Commonwealth* v. *Bly*, 448 Mass. 473, 490-491 (2007). In *Bly*, the motion judge found that the defendant had abandoned cigarette ends and an empty bottle that he had left behind in an interview room at a police station. The Supreme Judicial Court concluded that the defendant's actions — leaving the items behind in a place over which he could assert no control and not attempting to return to collect them — manifested a lack of any expectation of privacy in the items. *Id.* at 490-491.

Viewing the present case against this backdrop, we conclude that the motion judge's finding that the defendants' verbal disavowals of ownership did not amount to abandonment was not erroneous. In gauging the defendants' intent with respect to the suitcase, the judge was entitled to consider the totality of the circumstances attending the encounter with the police. In particular he was entitled to infer, as in *Straw*, that the suitcase had been brought into the home specifically to keep its contents private. The motion to suppress was properly allowed.[8]

Police take significant risks in choosing to ignore the warrant

---

[8]We note as an aside that the outcome here is consistent with the Commonwealth's policy in regard to automatic standing. Under the Massachusetts automatic standing rule, where possession of the item is an element of the crime, a defendant is vested with standing to challenge the constitutionality of a search, notwithstanding the fact that the defendant disclaims any ownership interest in the place searched. Thus, in *Commonwealth* v. *Amendola*, 406 Mass. 592, 600 (1990), the court concluded that a defendant could challenge

requirement embedded in art. 14 and the Fourth Amendment —
needless risks in cases, such as this, where there may well have
been a strong basis for a finding of probable cause. In any event,
as noted, we find no reason to set aside the motion judge's find-
ing that the defendants here did not intend to abandon the suitcase
found in their home.

The order allowing the motion to suppress is affirmed.

*So ordered.*

---

the search of an automobile even though he had told police that the car did
not belong to him. In reaching that outcome, the court observed that "it would
be naive to credit, without any reservations, the defendant's disassociation
from the [automobile]. The defendant was faced with [a] dilemma . . . .
There is too great a risk that the defendant, in order to escape conviction, was
willing to perjure himself by disclaiming any connection with [the automobile
in which contraband was found]." *Ibid.* The automatic standing rule removes
that dilemma as to the right to contest a search in those cases in which "a
defendant is charged with a crime in which possession of the seized evidence
at the time of the contested search is an essential element of guilt." *Id.* at 601.

We decline Augello's implicit suggestion that we adopt a rule that precludes
the use of disclaimers of ownership as a basis for negating an otherwise
enforceable expectation of privacy in all situations where there is a basis for
inferring that the disclaimer was made under oppressive circumstances, such
as where an acknowledgment of ownership would have been inculpatory. Our
current approach, which looks to all of the circumstances present in any
particular case and which emphasizes the place in which property is found, is
sufficient to safeguard the interests protected by art. 14 and the Fourth
Amendment.